## LUCILLE STEERE v. STATE, DEPARTMENT OF PUBLIC WELFARE AND ANOTHER.

243 N. W. 2d 112.

May 21, 1976—No. 45615.

*Eric S. Janus*, Legal Aid Society of Minneapolis, for appellant.

*Warren Spannaus*, Attorney General, *Thomas Fabel*, Deputy Attorney General, and *John H. Daniels*, Special Assistant Attorney General, for respondent Department of Public Welfare.

Heard before Kelly, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Appellant, Lucille Steere, a recipient of Aid to Families with Dependent Children (AFDC),[1] appeals from an order of the district court affirming a determination of the commissioner of public welfare which authorized recoupment of certain amounts from her AFDC grant. We affirm.

---

[1] AFDC is an example of so-called "cooperative federalism," i.e., joint Federal-state financial and administrative participation in a program designed to materially assist dependent children and their families. While the program is administered by state and county welfare departments, much of its financial support comes from the Federal government. It is axiomatic that state officials are bound by valid Federal statutes and regulations in administering the program. See, Blue Earth County Welfare Dept. v. Cabellero, 302 Minn. 329, 225 N. W. 2d 373 (1974); Meagher v. Hennepin County Welfare Bd. 300 Minn. 446, 221 N. W. 2d 140 (1974).

Appellant has been a recipient of AFDC for her needs and those of her two minor children since 1972. She was employed during 1973, and her employer withheld a portion of her earnings for state and Federal income taxes. In January 1974, the Hennepin County Welfare Department (hereafter the Welfare Department) sent appellant and other AFDC recipients a printed card which read in relevant part:

"State and federal income tax refunds are considered available to meet need. These refunds must be reported to the County Welfare Department at the time they are received. Some adjustment in your grant will be necessary to allow for this income. If you have any questions please call this agency."

On February 14, 1974, the Welfare Department also requested of appellant copies of her state and Federal tax returns. She promptly supplied the returns.

Appellant received a Federal income tax refund of $255.70 on March 24 and a state income tax refund of $67.10 on March 26, for a total of $322.80 in refunds. She spent the refunds almost immediately and before April 1, 1974, on food, clothing, heating, and other necessary items for her family. Although she admitted receiving the card instructing her to report the refunds when received, she did not do so. When she telephoned her eligibility technician in early April to ask a question regarding a financial report, the technician asked whether she had received her refund and she responded affirmatively.

On April 1, 1974, appellant received her full April grant of $275. On April 2, 1974, the Welfare Department suspended appellant's grant of $275 for May 1974 and reduced her grant for June 1974 to $265.50. This action was taken to recoup $284.50 which the Welfare Department alleged was overpayment to appellant in March when she had received her full grant plus the income tax refunds. The $284.50 figure (rather than the full refund of $322.80) was apparently used because it represented in-

come tax withheld from appellant's income in 1973 according to the Welfare Department's records.

Appellant challenged the suspension and reduction in an appeal to the Minnesota State Department of Public Welfare (hereafter State Department). On July 26, 1974, the commissioner of public welfare entered a revised order affirming the reduction, but reversing the suspension on the ground that state regulations permitted recoupment of only one-half of total monthly "disregarded income." Appellant challenged the commissioner's order in the district court, which affirmed the order on November 29, 1974. Pursuant to the commissioner's revised order, appellant's grants were reduced in amounts varying from $55 to $62 a month until $284.50 had been recouped.

Appellant raises three issues on this appeal:

(1) Can public assistance be recouped from the recipient without specific Minnesota statutory authorization?

(2) Are tax refunds "income" under Federal regulations governing AFDC?

(3) Are Minnesota and Federal recoupment regulations consistent with the Social Security Act?

■ Appellant initially challenges the right of the Welfare Department or any public agency to recoup public assistance funds not fraudulently obtained without specific Minnesota statutory authorization. She relies chiefly on the following dictum in Robertson v. Johnson, 294 Minn. 201, 205, 200 N. W. 2d 316, 319 (1972):

"* * * Where there is no fraud exercised by the pauper in obtaining public assistance, only by express statutory authority can the *pauper's assets* be reached for reimbursement of such assistance. In re Settlement of Beaulieu, 264 Minn. 406, 119 N. W. 2d 25 (1963)." (Italics supplied.)

Beaulieu supported the above proposition only in dicta, but cited County of Brown .v. Penkert, 164 Minn. 55, 204 N. W. 469 (1925), in which this court held that a decedent's estate was not

liable for poor relief furnished to her in the absence of statutory authorization. The language in County of Brown, however, is narrower than that in the other cases. In County of Brown, we discussed the problem as follows:

"Caroline Dufek had a legal settlement in Brown county. She died testate on May 4, 1924. For 5 years prior to her death the county at her request furnished her aid by giving her grocery orders, and just prior to her death hospital care. This was furnished her as a poor person by the county commissioners in the ordinary way after investigation in discharge of the obligation imposed by statute. See G. S. 1923, § 3171; G. S. 1913, § 3081. The deceased had an equity in a 3-room cottage. This was known to the county. *There was no mistake nor misrepresentation nor deception.* There is no statute making a decedent or the estate of a decedent liable for poor aid furnished. It is given from a fund derived from taxation. The duty of furnishing it is imposed by law. It is in the nature of a charitable gift made a legal duty by the statute which embodies a sympathetic regard for the misfortunes of others. *This is not a case where one, under no legal obligation, furnished relief, not intended as a gift. Under such circumstances, liability may arise upon the basis of a true contract implied in fact.*" (Italics supplied.) 164 Minn. 56, 204 N. W. 469.

We think the facts and administrative scheme here warrant disregard of the dicta in our prior cases based on the above quoted language in County of Brown. The appellant was *overpaid* in the instant case. She was not entitled to (nor was the Welfare Department legally obligated to provide her with) full grants in March and April when she had received and had available her tax refunds. Such an overpayment of government funds, which resulted at least in part from appellant's failure to report receipt of her refunds immediately, gives rise to an obligation to repay. As the New Jersey Supreme Court stated in facing a similar problem:

"* * * We are here dealing with *overpayments* of assistance, i.e., public money paid out in *excess* of that permitted by law. The mere receipt of such money can be said to create an obligation to repay, akin to the common law action in *assumpsit* for money had and received. In such a situation, it is unnecessary for the Legislature to specify that a welfare board has the right to recover this money. As heretofore noted, such right would be inherent in the board's functioning unless the Legislature provides otherwise." Redding v. Burlington County Welfare Bd. 65 N. J. 439, 445, 323 A. 2d 477, 480 (1974).

Moreover, the commissioner of public welfare is given broad statutory authority to regulate public assistance and comply with Federal regulations, including those asserted to justify recoupment in the instant case. Minn. St. 256.01, 256.011. We decline to interfere with what we perceive to be the commissioner's broad discretion to fairly administer public assistance.

■ Appellant argues that Department of Public Welfare Regulation IMM III-3240.14, which treats tax refunds as "income" to be applied to current need, violates 45 CFR 233.20(a) (3)(ii)(c) of the Federal AFDC regulations promulgated by the Department of Health, Education, and Welfare (HEW). "IMM" designates Income Maintenance Manual, a compilation of the State Department's policies and procedures for administration of the AFDC program. While we will use the term "regulation" to refer to the department's policy on income tax refunds, this regulation is not a "rule" within the meaning of Minn. St. 15.0411, subd. 3, of our Administrative Procedure Act, nor was it promulgated pursuant to administrative rulemaking procedures. It is merely a policy statement of the State Department. In Wacha v. Kandiyohi County Welfare Bd. 308 Minn. 418, 242 N. W. 2d 837 (1976), we held that this policy statement is not invalid as a violation of state rulemaking procedure.

The state regulation provides:

"Income tax refunds, at the time they are received, must be considered as income and must be applied to current need."

The applicable Federal regulation provides in relevant part:

"* * * [I]n establishing financial eligibility and the amount of the assistance payment: (a) *All income and resources,* after policies governing the allowable reserve, disregard or setting aside of income and resources have been applied, will be considered in relation to the State's standard of assistance, and will first be applied to maintenance costs; * * * (c) *only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered*; and (d) income and resources will be reasonably evaluated." (Italics supplied.)

Appellant argues that tax refunds are not available for current use "on a regular basis" and should therefore be considered personal property she is allowed to keep and not income.[2]

Several courts have considered this question and a split of authority has developed. We will discuss what we regard as the two significant cases.[3] In Kaisa v. Chang, 396 F. Supp. 375, 377, note 13 (D. Hawaii 1975), the United States District Court said that an income tax refund was not available on a regular basis be-

---

[2] Minnesota statutes and regulations accord certain "lump sum payments"—e. g., inheritances and insurance settlements—and "liquid assets"—such as savings, cash on hand, and certain investments—the status of personal property which a recipient and two children are allowed to possess up to a value of $500 and still remain eligible for full benefits. Minn. St. 256.73, subd. 2(2); Minnesota Department of Public Welfare, AFDC Program Manual, IV-M-9-i and IV-L-4.

[3] Other cases include Richards v. Lavine, No. 104731, N. Y. Supreme Court, Broome County (1974) (refunds are deferred income available on a regular basis); County of Alameda v. Carleson, 5 Cal. 3d 730, 97 Cal. Rptr. 385, 488 P. 2d 953 (1971), appeal dismissed for want of a substantial Federal question, 406 U. S. 913, 92 S. Ct. 1762, 32 L. ed. 2d 112 (1972) (approving a California scheme differentiating between recurring and nonrecurring lump-sum payments). See, also, Carr v. Saucier, (N. D. Ga. 1973) No. 16,704 Civil (unreported decision) (one-time lump-sum social security benefit payment was not properly considered income available on a regular basis).

cause of "the uncertainty of receiving any tax refund and the fact that even if received, it can be expected, at most, once annually." In Walker v. Juras, 518 P. 2d 663 (Ore. App. 1974), the Oregon Court of Appeals held that tax refunds were properly income. In Walker the court noted that refunds were available on an annual basis and were distinguishable from other kinds of lump-sum payments (inheritances, gifts, insurance benefits, personal-injury damages, etc.) in that they were (1) attributable to the efforts of the recipient and (2) to some extent, within his control. The court quoted from an unpublished Federal district court opinion, Carr v. Saucier (N. D. Ga. 1973) No. 16,704 Civil, as follows:

"The common elements of lack of effort and control on the part of the recipient in these lump sum payments is lacking in the income tax refund. The refund is an annual payment of income earned and the wage earner has the ability to elect to receive a portion of his payment at the end of the tax period by varying the number of his claimed dependents. This power to control, to some degree, the existence and amount of the amount paid in cash in the scheduled pay period and the amount paid at the end of the tax period supports the division's treatment of the refund as regular income. By decreasing the number of claimed dependents below actual dependents a wage earner may decrease his net receipts. By this means he may qualify for ADC for 11 months of a year and receive his refund, even though his actual income takes him above the qualified standards." 518 P. 2d 665.

We prefer the result of the Oregon case. Black, Law Dictionary (Rev. 4 ed.), p. 1450, defines "regular" as: "* * * Steady or uniform in course, practice, or occurrence; not subject to unexplained or irrational variation." Income tax refunds are a reasonably predictable annual source of income. While they may be subject to some variations, for wage earners with low incomes and relatively stable economic circumstances (a characterization which we note describes most AFDC recipients) tax

refunds are a sufficiently uniform source of income to be deemed available on a "regular" basis.[4]

This result comports more closely with the view taken by HEW, the agency charged with administration and regulation of AFDC on the Federal level. In an HEW Program Instruction to state agencies administering public assistance programs, HEW stated in part:

"Section 402(a)(7) of the Social Security Act [42 USCA, § 602(a)(7)] and Federal regulation 45 CFR 233.20 provide that a State agency shall take into consideration all income and resources, except as otherwise specified in the Act, in determining need and the amount of assistance under the public assistance titles. Regulation 45 CFR 233.20(a)(3)(ix) also provides that the availability of all potential sources of income shall be explored.

"In determining need and amount of assistance, the State agency may take into consideration the amount of earned income an applicant or recipient would receive if he claimed the maximum number of exemptions he is entitled to under the law or his actual earned income plus any income tax refund received, if the applicant or recipient does not claim the maximum number of exemptions." Department of Health, Education, and Welfare Social and Rehabilitation Service, Program Instruction APA-PI-74-13 (April 2, 1974).

In addition, HEW has deleted reference to the term "regular" in its revised income assessment regulations. The proposed provision, 45 CFR 233.20(a)(3)(ii)(*d*), provides as follows:

---

[4] Among the elements of regularity in the income tax refund are the following: (1) The amount of tax withheld (and hence the amount of any refund) is determined from a prepared table based on gross income, number of defendents, and marital status; (2) the recipient most often calculates his own tax and is therefore aware of the amount of any refund before it arrives; (3) the refund is available on an annual basis at a time based in large part on when the recipient files his return.

"[N]et income available for current use and currently available resources shall be considered; income and resources are considered available both *when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance*." (Italics supplied.)

While we are informed that this regulation has not yet taken effect, the fact that the term "regular basis" has been deleted further evidences HEW's belief that *all* income, including tax refunds, must be applied to offset need. Although the Program Instruction and regulation change occurred after the initiation of administrative proceedings in the instant case, they provide persuasive evidence of HEW's views on this issue.[5]

Finally, viewing income tax refunds as income comports more closely with the equitable and efficient operation of the AFDC program. As noted in Carr v. Saucier, (N. D. Ga. 1973) No. 16,704 Civil, cited in Walker v. Juras, *supra*, recipients would otherwise be encouraged to claim fewer deductions than they were legally entitled to in order to secure a larger, grant-determination-free refund. Federal and state treasuries thus become a protected savings account which may be withdrawn annually without an impact on the AFDC grant. Such a result would threaten the laudable goals and fiscal integrity of the AFDC program.[6] We therefore hold that income tax refunds are net income

---

[5] Alternatively, income tax refunds might be considered "currently available resources" within the meaning of the Federal regulation. They are certainly "resources" within the ordinary meaning of that term and are available to meet need when received. This construction would comport with the general Federal AFDC policy that all income and resources be considered in grant calculation absent a specific policy to the contrary. Shea v. Vialpando, 416 U. S. 251, 253, 94 S. Ct. 1746, 1750, 40 L. ed. 2d 120, 125 (1974).

[6] This problem was obviously a concern of HEW in the drafting of the proposed regulation, 45 CFR 233.20(a)(3)(ii)(*d*). Under that regulation, a recipient claiming fewer deductions than he was permitted would nonetheless be credited with the receipt of income assuming the proper number of deductions.

actually available for current use on a regular basis within the meaning of 45 CFR 233.20(a)(3)(ii)(c) and may be considered income to be applied to current need in the AFDC structure.

■   Appellant challenges state and Federal regulations authorizing recoupment as inconsistent with the Social Security Act. Her challenge is two-pronged: (1) She argues that all recoupment through grant reduction is prohibited under the Social Security Act, 42 USCA, § 601, et seq.; and (2) she argues that Minnesota Department of Public Welfare regulations governing recoupment violated the "earned income disregard" provisions of 42 USCA, § 602(a)(7,8).

Appellant asserts that 45 CFR 233.20(a)(12), which, in essence, authorizes recoupment from AFDC grants in certain instances, is invalid. That regulation provides in relevant part:

"(a)   *Requirements for State plans.* * * *

\*     \*     \*     \*     \*

"(12)   *Recoupment of overpayments and correction of underpayments.* Specify uniform Statewide policies for:

"(i)   Recoupment of overpayments of assistance, including certain overpayments resulting from assistance paid pending hearing decisions.

"(A)   The State may not recoup any overpayment previously made to a recipient:

"(*1*)   Unless the recipient has income or resources exclusive of the current assistance payment currently available in the amount by which the agency proposes to reduce payments: except that,

"(*2*)   Where such overpayments were occasioned or caused by the recipient's willful withholding of information concerning his income, resources or other circumstances which may affect the amount of payment, the State may recoup prior overpayments from current assistance grants irrespective of current income or resources.

"(B)   Withholding of information which is subject to the pro-

visions of paragraph (a) (12) (i) (A) (2) of this section includes the following:

"(1)  Willful misstatements (either oral or written) made by a recipient in response to oral or written questions from the State agency concerning the recipient's income, resources or other circumstances which may affect the amount of payment. Such misstatements may include understatements of amounts of income or resources and omission of an entire category of income or resources;

"(2)  A willful failure by the recipient to report changes in income, resources or other circumstances which may affect the amount of payment, if the State agency has clearly notified the recipient of an obligation to report such changes. The recipient shall be given such notification periodically at times (not less frequently than semi-annually) and by methods which the State agency determines will effectively bring such reporting requirements to the recipient's attention."

The essence of appellant's argument is that Congress, which has authorized recoupment for other kinds of public assistance,[7] but specifically rejected it for AFDC, intends that AFDC benefits should be restricted only because of lack of need or dependency.[8] Appellant concludes that the Federal regulation authorizing recoupment is not a need or dependency regulation and is therefore invalid. After careful consideration and review of the authorities cited by appellant, we reject this argument for the reasons that follow.

---

[7] In 1972 Congress added recoupment provisions to the Supplemental Security Income Program, which combines and overhauls former programs for the aged, blind, and elderly. 42 USCA, § 1383(b).

[8] Appellant argues that Congress therefore acquiesced in the decision in Bradford v. Juras, 331 F. Supp. 167 (D. Ore. 1971) (three-judge court) that overpayments may not be recouped by reducing current AFDC payments. Congress was aware of the Bradford decision when it considered and rejected mandatory recoupment. See, S. Rep. No. 92-1230, Report on H. R. 1, 92nd Cong. 2nd Sess. (1972), p. 476.

First, the legislative history of the Social Security Act and the Federal district court cases cited by appellant do not provide persuasive support for her argument. While Congress has not passed proposed legislation authorizing *mandatory* recoupment by state agencies in the AFDC program, neither has it prohibited recoupment or made any effort to invalidate the Federal regulation at issue here. Thus, Congressional "intent" in this area is uncertain. Under these circumstances, we decline to engage in speculation about it and prefer to uphold the regulation.

Likewise, United States Supreme Court cases provide little assistance. While the Supreme Court has held that state agencies may not, in considering the income and resources available to a recipient in fixing a grant, consider income or resources that are not "in fact" available to a recipient for current use on a regular basis,[9] it has also accorded those agencies substantial discretion in making need and benefit determinations consistent with local policies and socioeconomic value judgments.[10]

Second, contrary to appellant's assertion, lower Federal court cases which have faced recoupment issues similar to the one at bar are either distinguishable on their own facts or support the validity of the Federal regulations before them. The United States District Court for the District of Columbia held a predecessor of the current Federal recoupment regulation invalid because it purported to authorize recoupment from current assistance payments without regard to need. That court commented:

---

[9] Van Lare v. Hurley, 421 U. S. 338, 95 S. Ct. 1741, 44 L. ed. 2d 208 (1975); Lewis v. Martin, 397 U. S. 552, 90 S. Ct. 1282, 25 L. ed. 2d 561 (1970); King v. Smith, 392 U. S. 309, 88 S. Ct. 2128, 20 L. ed. 2d 1118 (1968).

[10] New York State Dept. of Social Services v. Dublino, 413 U. S. 405, 93 S. Ct. 2507, 37 L. ed. 2d 688 (1973); Wyman v. James, 400 U. S. 309, 91 S. Ct. 381, 27 L. ed. 2d 408 (1971); Dandridge v. Williams, 397 U. S. 471, 90 S. Ct. 1153, 25 L. ed. 2d 491 (1970); Charleston v. Wohlgemuth, 332 F. Supp. 1175 (E. D. Pa. 1971), affirmed, 405 U. S. 970, 92 S. Ct. 1204, 31 L. ed. 2d 246 (1972); Snell v. Wyman, 281 F. Supp. 853 (S. D. N. Y. 1968), affirmed, 393 U. S. 323, 89 S. Ct. 553, 21 L. ed. 2d 511 (1969).

"In permitting the recoupment of 'any overpayment' even though it may come only from a reduction in 'current assistance payments,' the regulation before us clearly authorizes a change in the recipient's monthly payment, even though his financial circumstances, apart from the overpayment, have not changed. *In so doing, the regulation requires the states to presume conclusively that the overpayment is currently available even though it may have long ago been spent.* The recoupment regulation therefore violates in fact availability of income and resources because it presumes income is available when this may not in fact be so. The Court finds no distinction between the presumptions struck down in King v. Smith, *supra,* and Lewis v. Martin, *supra,* and the presumption of availability embodied in HEW's recoupment regulation. King invalidated a presumption that a man in the house will make income available to a child who is not his own. Martin likewise upset a presumption that the income of a non-adoptive stepfather is available to children to whom he owes no legal duty of support. The recoupment regulation here at issue similarly presumes income or resources are available when they may not in fact be available. We therefore hold that the regulation at issue is inconsistent with the Social Security Act of 1935 as amended." (Italics supplied.) National Welfare Rights Organization v. Weinberger, 377 F. Supp. 861, 868, (D. D. C. 1974).

In a similar vein, appellant argues here that she spent the tax refunds almost immediately and that they were not available to meet her needs or those of her children in May 1974 or thereafter, when recoupment was accomplished. Appellant ignores several factors which distinguish her case from National Welfare Rights Organization v. Weinberger, *supra*: (1) The reason recoupment could not be accomplished until May 1974 was that appellant did not promptly report receipt of her tax refunds, and the Welfare Department did not learn of their receipt until *after* the April grant had been paid; (2) regardless of when and how appellant actually disposed of her tax refunds, those refunds were available to her to meet needs that would otherwise have

been met by the AFDC grant; and (3) recoupment did not invade established minimum grant levels of need, but only appellant's earned income beyond those levels.

The last factor noted distinguishes appellant's case from all of the cases she cites. As noted in the statement of facts, recoupment from appellant's grant was accomplished at the rate of one-half her "earned income disregard," or approximately $55 per month. The recoupment arose from outside income earned by appellant. *At no time did the appellant's grant plus her other available income fall below the minimum standards of need set for herself and her two children under the AFDC program.* The court in National Welfare Rights Organization v. Weinberger, *supra*, seemed to acknowledge the possibility of valid recoupment in this situation in the statement of the issue in that case:

"* * * What is at issue here is the power of the states to reduce current assistance payments to welfare recipients concededly eligible for such payments under state and federal law, for the purpose of recouping overpayments made to such recipients by state or local welfare departments, *without regard to the effect of such reduction on their ability to purchase items of daily need.*" (Italics supplied.) 377 F. Supp. 865.

This factor also distinguishes the case of Cooper v. Laupheimer, 316 F. Supp. 264 (E. D. Pa. 1970), relied on by appellant, which invalidated a Pennsylvania recoupment regulation. In that case, decided by a three-judge panel, the court observed:

"* * * The regulation arbitrarily directs that the duplicate payment must be recovered by proportionate reduction in two or four consecutive payments, *regardless of how little remains to satisfy the family's needs.*" (Italics supplied.) 316 F. Supp. 269.

One other Federal case is worthy of consideration in connection with the third factor. In Holloway v. Parham, 340 F. Supp. 336, 343 (N. D. Ga. 1972), the three-judge court saved a Georgia

recoupment statute by carefully construing it so any recoupment would not invade established need:

"Since this construction of Ga. Code Ann. § 99-2912(b) requires the Director to waive repayment if there is *need*, it does not allow restitution from *needy* dependent children for the misconduct of their parents. Thus, Ga. Code Ann. § 99-2912(b) is consistent with the provisions of the Social Security Act [42 U.S.C. § 602(a) (10)] and HEW regulations [45 C.F.R. 233.20 (a)(3)(ii)(d)]."

The court remanded the case with instructions to waive recoupment unless there had been a change in "need":

"The record clearly indicates that defendant made no such showing and that the defendant's hearing officer did not make any determination as to a change in the 'need' of plaintiff and her children. Therefore, this court finds that defendant invalidly applied Ga. Code Ann. § 99-2912(b) to plaintiff and her children. Accordingly, the case is remanded to defendant with the instruction that absent a finding that there has been a change in 'need' of plaintiff and her children, defendant is to waive repayment." 340 F. Supp. 344.

Since the Minnesota scheme of recoupment is careful to leave in the hands of the recipient more than sufficient income to meet minimum levels of need established under the AFDC program, we uphold it as consistent with the relevant Federal authorities discussed above.[11]

Third, we cannot agree with appellant's assertion that because she had spent her refunds on necessities before recoupment, the

[11] Any consideration we would give to the decision in Bradford v. Juras, 331 F. Supp. 167, 169 (D. Ore. 1971) (three-judge court), relied on by appellant, is markedly diminished by that court's obvious error in determining that the "earned income disregard" is not mandatory. 42 USCA, § 602(a) (7, 8). See, X v. McCorkle, 333 F. Supp. 1109 (D. N. J. 1970) affirmed per curiam sub nom. Engelman v. Amos, 404 U. S. 23, 92 S. Ct. 181, 30 L. ed. 2d 143 (1971).

Welfare Department may not reduce her subsequent grants to compensate for her use of those refunds. Our acceptance of such an assertion would require the Welfare Department to catch recipients with funds "in hand" at the time their monthly grants were paid in order to ensure that the funds had not been spent before recoupment was begun. This is an obvious administrative impossibility. If it became a requirement, practically no available income could be considered in determining the grant. The essence of appellant's situation is this: She was entitled to receive a $275-a-month grant based on a formula which considered need and income. Whether she actually spent the grant in a day or in 30 days, her grant remained $275 a month. When she received her income tax refunds, she received income sufficient to replace over one month's grant at the $275-a-month rate. Again, whether she spent her refunds in a day, a month, or two months, they were available to her to meet the equivalent of over one month's grant, and she could have so treated them in budgeting. The AFDC program is not designed to provide funds to cover all expenses a recipient might reasonably spend on "necessary" items. It is designed to provide funds to meet minimum established levels of need for large numbers of families. It can do so fairly, equitably, and efficiently only if availability of income is presumed for the same period and in the same manner as the availability of the grant itself would be presumed.

Appellant's most troublesome argument is that Minnesota Department of Welfare Regulations IMM IV-1291[12] violates 42 USCA, § 602(a) (7,8), which requires the state agency to dis-

---

[12] IMM IV-1291 reads in relevant part: "Recoupment of overpayments may be made only in a case in which the recipient has disregarded income, and the amount recovered each month shall not exceed one-half of the total monthly disregarded income.

"Recoupment of overpayments is obtained by withholding the determined amount from each monthly assistance check until the total overpayment has been recovered or until the recipient is no longer eligible for assistance, whichever occurs first."

regard a certain portion of appellant's income in determining "need" as a work incentive.

42 USCA, § 602, provides in relevant part as follows:

"(a)  A State plan for aid and services to needy families with children must

\*  \*  \*  \*  \*

"(7)  except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income; (8) provide that, in making the determination under clause (7), the State agency—

(A) . shall with respect to any month disregard—

(i)  all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment, and

(ii)  in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month (except that the provisions of this clause (ii) shall not apply to earned income derived from participation on a project maintained under the programs established by section 632 (b)(2) and (3) of this title)."

Clause (8) and the statutory scheme in which it operates contemplates the following formula for calculation of an AFDC grant:

Grant= Minimum Need Level (MNL) - [Net Income (NI) - Earned Income Disregard (EID)]

The operation of clause (8) can be illustrated as follows. Assume that the state agency's minimum need level (ascertained by other state and Federal statutes and regulations not relevant here) for a family of two children is $300 a month. Assume further that the recipient and head of this family has monthly income of $270. The monthly AFDC grant would be calculated in this way:

Grant = $300 (MNL) - [$270 (NI) - $110 (EID)] = $140 a month

The "earned income disregard" in this example is the first $30 of income plus 1/3 of the amount of monthly income remaining (i.e., 1/3 of $240), or $110.

At the outset, we note that the state *must* disregard the income referred to in clause (8). In X v. McCorkle, 333 F. Supp. 1109 (D. N. J. 1970), affirmed per curiam sub nom. Engelman v. Amos, 404 U. S. 23, 92 S. Ct. 181, 30 L. ed. 2d 143 (1971), a three-judge court held that New Jersey regulations which fixed an "administrative ceiling" on income for purposes of AFDC eligibility, but did not disregard the income referred to in clause (8), were invalid. The court commented as follows on the history and policy of clause (8):

"Section 402(a) (8) [42 USCA, § 602(a)(8)] stipulates that certain amounts of earned income *shall be* disregarded when a state, as it must in accordance with § 402(a) (7) [42 USCA, § 602(a)(7)], considers the 'other income and resources' of an applicant in order to determine need. This provision was intended as an incentive to welfare recipients to seek employment. It was part of a congressional effort made to ensure that an applicant not find it more advantageous to remain on welfare

than to seek employment. The legislative history reveals a concern among the Congressmen that one of the stated goals of the program—'to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care'—was not being achieved.

"The Senate Finance Committee stated that disregarding some portion of earned income was essential to implement this objective. The Committee in its report explained: 'A key element in any program for work and training for assistance recipients is an incentive for people to take employment. If all the earnings of a needy person are deducted from his assistance payment, he has no gain for his effort. Currently, there is no provision in the Social Security Act under which States may permit an employed parent or other relative under the AFDC program to retain some of his earnings. There is no doubt, in the opinion of the committee, that the number of recipients who seek and obtain employment will be greatly increased if, in conjunction with the work incentive program, there may be added to title IV some specific earnings incentives for adults to work. The Department of Health, Education and Welfare has informed the committee that research and demonstration projects have illustrated that more recipients will go to work when an incentive exists.'

"The report continued to state that, 'the committee believes that this provision will furnish incentives for members of public assistance families to take employment and, in many cases, increase their earnings to the point where they become self-supporting.' " 333 F. Supp. 1116.

The court rejected New Jersey's arguments that its scheme substantially complied with clause (8) and provided sufficient work incentives:

"The legislative history reveals the general purpose of section 402(a) (8) [42 USCA, § 602(a)(8)], and the language of the section is quite specific. It denominates an amount, $30, and a

proportion, one-third of the individual's earned income, which must be disregarded before determining need.

"If Congress were willing to allow states to devise methods of encouraging employment by developing their own formulae, the statute could have been so written. As it exists today, however, it is a particular directive mandating that states follow a specified formula. No other scheme would comply with the statute." 333 F. Supp. 1117.

The revised order of the Minnesota commissioner of public welfare authorized recoupment of one-half of appellant's "earned income disregard" per month. Thus, it would initially appear that appellant is correct in her contention that the commissioner is not disregarding the full amount of income required by clause (8). However, clause (8) refers to disregarding income "in making the determination under clause (7)." Clause (7), in turn, refers to taking into consideration income and resources "in determining need." The issue therefore becomes whether the recoupment process carried out in the instant case was a determination of need.

The United States District Court for the District of Minnesota, speaking through Judge Earl Larson, has recently considered this issue of first impression in Johnson v. Likins (D. Minn. 1975) No. 4-75-318 Civil. Judge Larson issued a preliminary injunction prohibiting the Minnesota Department of Public Welfare recouping overpayments *caused solely by agency error* from disregarded income. In issuing the injunction, the court held that the Minnesota recoupment regulation involved a determination of need and violated the mandate of § 602(a)(8):

"* * * Need determination is so inherent in the regulation that [Minnesota] DPW has been unable to argue the validity of that regulation without becoming deeply enmeshed in considering the needs of AFDC recipients and in considering the income and resources of such recipients in relation to their needs. When

a State concerns itself with the need of AFDC recipients, it must pay heed to Federal work incentive policies as well."

Judge Larson further concluded that Federal regulations did not authorize the kind of recoupment accomplished in Johnson, since "income or resources exclusive of the current assistance payment currently available" in 45 CFR 233.20(a)(12)(i)(A)(1) did not include clause (8) disregarded income.

The instant case is distinguishable from Johnson since the conduct of the recipient, and not the error of the agency, was the cause of the overpayment. While the Welfare Department has not alleged fraud on the part of this recipient, the administrative hearing record discloses the following uncontradicted testimony of appellant herself:

"[Mr. McGreevy, advocate for the county welfare department]: Mrs. Steere then you received them [income tax refunds] on March 24 and March 26, is that right?

"[Mrs. Steere]: Uh huh.

"[Mr. McGreevy]: And when did you report it to the agency?

"[Mrs. Steere]: That I received this you mean, that I * * *

"[Mr. McGreevy]: Yah

"[Mrs. Steere]: When I received it or when I spent it?

"[Mr. McGreevy]: When you received it, the income tax refunds?

"[Mrs. Steere]: *I never did call in and report it. I sent in my forms and I thought that was all the reporting I needed to do.*

"[Mr. Janus, appellant's counsel]: I believe you testified that you called her up in April and told her you got it.

"[Mrs. Steere]: Yah, I asked her a question on my financial report and she asked me if I had received my income tax returns and I said yes.

* * * * *

"[The referee]: * * * Mrs. Steere do you recall whether

or not your January warrant, you did receive an enclosure of some type?

"[Mrs. Steere] : A card * * *

"[The referee] : Do you recall basically what it said?

"[Mrs. Steere] : Pretty much what she went over [an eligibility technician had previously testified as to the content of the card as set forth *supra*], *informing us that you would have to report it as income* * * * it would be considered income, but I had no idea of this other.

"[The referee] : Of this other what?

"[Mrs. Steere] : Of paying it back or not being allowed to have it." (Italics supplied.)

The referee, in holding for the county, stated:

"We do find that the petitioner is attempting a circuitous route of bypassing responsibility for accounting for her income tax refund. The issue is not 'overpayment'; it is accountability for income received."

The commissioner upheld this finding in a revised order, and an experienced district court judge approved it, noting: "While there may be no allegation of fraud, certainly appellant was mistaken in not notifying the county at the time she received her income tax refund as she had been requested to do."[13]

---

[13] Under the circumstances, the county might have sought a specific finding that the overpayment was caused by "willful failure of the recipient to report changes in income, resources or other circumstances which may affect the amount of payment" within the meaning of 45 CFR 233.20(a)(12)(i)(B)(2). Appellant admitted knowledge of her obligation to report her tax refunds, but she did not do so until after she had received her full April grant and then only in response to a specific inquiry. Despite the clear and specific notice to report receipt of the refunds *immediately*, she failed to comply. Since recoupment in cases of willful conduct is plainly allowed by Federal regulations from the assistance payment itself, appellant's argument on disregards would fail if a finding of willful conduct has been made. 45 CFR 233.20(a)(12)(i)(A)(2). However, we proceed on the record and findings before us.

Our examination of the relevant regulations and statutes convinces us that recoupment is not a "determination of need" within the meaning of 42 USCA, § 602(a)(7,8). While the recoupment process may consider "need," in the ordinary meaning of that word, in order to avoid cutting into the minimum grant level for a particular family, it does not determine need within the meaning of the Social Security Act. The process of determining need for assistance, which is completely separate from the recoupment process, includes the steps set forth in the hypothetical example discussed earlier: (1) Setting a basic grant level for a family of a particular size; and (2) deducting currently available income and resources from that level. When that process takes place, $30 plus 1/3 of the remainder of any net income must be disregarded under the Act. It is uncontroverted that the Welfare Department does routinely disregard that income, and that it did so in this case.

Appellant maintains, however, that such income must continue to be disregarded throughout the recoupment process as well, since that process also determines need. We disagree. The recoupment process corrects prior overpayment, it does not determine need. The fact that the recoupment process takes care that recoupment not invade a family's basic grant level as established in the need-determination process does not mean that recoupment is a redetermination of need. It means, at most, that the recoupment process recognizes and utilizes need as already established by the former process.

The recoupment regulations at issue here allow recoupment from "income or resources exclusive *of the current assistance payment currently available* in the amount by which the agency proposes to reduce payments." 45 CFR 233.20(a)(12)(i)(A)(1). (Italics supplied.) Earned income from employment, such as appellant's here, is exclusive of her payment (i.e., it comes from her employer, not AFDC) and is currently available to her. Therefore, prior overpayments may be recouped from that earned income. Since the Minnesota regulations recoup only one-

half of the amount of that income that had been previously disregarded in the need-determination process, they clearly fall within the limits permitted by Federal regulations.[14] Furthermore, in response to appellant's argument that the work-incentive policy of the Social Security Act is violated, we note that the Minnesota regulations allow appellant to retain one-half of her disregarded income, and that retention constitutes an incentive to her to keep her job and continue earning income.

Acceptance of appellant's argument would virtually eliminate recoupment except in cases of fraud. While a negligible number of recipients might receive windfalls and be caught with those funds in hand, we doubt that the vast majority of recipients have any additional income or resources available to them other than earned income. If the disregarded portion of that earned income could not be touched, and the remainder were deducted from the grant in any event, there would be no practical way to recoup overpayments. Such a situation would disturb the fiscal integrity of AFDC and would give overpaid recipients an unfair windfall when compared with other recipients.

Our views on this problem are shared by HEW. In a memorandum on behalf of the United States as amicus curiae filed in the case of Johnson v. Likins, *supra,* after Judge Larson's issuance of the preliminary injunction, HEW takes the position that recoupment from disregarded income of overpayments caused by agency error is permissible under the Social Security Act and the regulations discussed herein. In commenting on the plaintiff's contentions and Judge Larson's memorandum in Johnson, HEW states:

"* * * Plaintiffs' view is incorrect since the disregarded income is in fact actually available income to the recipient in the

---

[14] We do not deem the fact that recoupment is accomplished through ultimate grant reduction to be of legal significance. That Minnesota welfare authorities choose to recoup by reducing the grant rather than through a civil lawsuit or other more cumbersome means is a matter of administrative convenience and discretion, not legal right.

amount of the proposed reduction in the assistance payment. It is the existence of the disregarded income which distinguishes this factual situation from that in *N.W.R.O. v. Weinberger*, [377 F. Supp. 861 (D. D. C. 1974)]. (In *N.W.R.O. v. Weinberger*, the *only* money available for recoupment was from the welfare grant itself and thus the Court focused upon the assumption of income rule regarding whether the overpayment was still available to the recipient.)

"Although plaintiffs are correct in stating that the disregarded income is to be ignored in determining the family's need, the crucial focus should be upon the words 'determining need' rather than on the word 'disregard.' Indeed the Court has so recognized. * * * Under H.E.W.'s recoupment regulations, the income which is encompassed by the disregard is not counted toward the determination of a family's need or the amount of assistance payment at that point when this determination occurs. * * * Plaintiffs mistakenly conclude that because such funds cannot be counted at the point when the need is determined, these funds may also not be considered available for recoupment. There are a few income disregards for which plaintiffs' conclusion would be correct * * *. Congress, in these exceptional instances, employed language which clearly precludes recoupment but did not use similar language in § 402(a) (8) (A) (ii)."

In commenting on the redetermination-of-need argument used in Johnson and in the instant case, HEW states:

"Since the state can recoup the amount of money it proposes to recoup only because of the existence of the disregarded funds, where no other source for recoupment is available it might be argued that reducing the payment by deducting the recoupment constitutes a redetermination of the amount of the assistance grant. HEW does not accept this interpretation. The choice to take the recoupment from the assistance payment (when there are available disregarded funds in an equal amount) is considered one of administrative convenience on the part of the

state. Essential to this analysis is an understanding of the concept of 'currently available income and resources.' Income which is earned during the course of the month in question is considered to have been currently available during the course of that month. Indeed, this must be the case, for to conclude that the income is currently available on a day when the computation of the monthly grant is made only if the recipients physically possess it on that day, would make the computation of need impossible; a recipient could spend the funds before the date of the computation and then claim that he has no income currently available. Thus for the state to deduct the amount of the recoupment from the benefit check does not constitute a reduction in the amount of the grant. The income received which had been disregarded for purposes of determining the grant is available to the recipient in lieu of the amount recouped from the grant check to meet the need standard or portion thereof which the state has undertaken to provide. No recomputation of the grant is involved, since the figure which was ascertained in the determination of need remains constant and the recoupment is substantively taken from the other available income which was never used to reduce the grant. Recoupment from the disregarded income therefore, would not leave the recipient with less income than the need standard or the percentage thereof which the State has decided to provide."

As we interpret the HEW position, that agency would regard the recoupment in the instant case as consistent with its regulations and the Social Security Act. The views of HEW on the construction of statutes and regulations it administers are entitled to great weight. New York State Dept. of Social Services v. Dublino, 413 U. S. 405, 93 S. Ct. 2507, 37 L. ed. 2d 688 (1973). See, also, N. L. R. B. v. Boeing Co. 412 U. S. 67, 93 S. Ct. 1952, 36 L. ed. 2d 752 (1973); United States v. Jackson, 280 U. S. 183, 50 S. Ct. 143, 74 L. ed. 361 (1930). Therefore, we hold that the recoupment process undertaken in the instant case was not a "de-

termination of need" within the meaning of clause (7), and the Welfare Department could recoup from earned disregarded income.[15] See, McGraw v. Berger, 410 F. Supp. 1042 (S. D. N. Y. 1976) (upholding New York's method of recouping overpayments in the face of a § 602[a][8] challenge).

We emphasize that this decision is based upon the particular facts of the instant case and the statutes and regulations relevant thereto. We offer no opinion regarding the effect of changes in state or Federal regulations subsequent to this case nor any opinion on the merits of the case before Judge Larson or his arguments. We leave to future cases the ultimate resolution of these matters.

We have also considered appellant's final contention regarding calculation of the recoupment, and we find it to be without

---

[15] In response to HEW's memorandum, appellant relies heavily on X v. McCorkle, 333 F. Supp. 1109 (D. N. J. 1970), affirmed per curiam sub nom. Engelman v. Amos, 404 U. S. 23, 92 S. Ct. 181, 30 L. ed. 2d 143 (1971). That case involved a New Jersey regulation which denied AFDC benefits to the extent that a family's "available adjusted income," calculated without deduction for the "statutory disregards" specified by § 402(a)(8) of the Social Security Act, 42 USCA, § 602(a)(8), exceeded an administrative ceiling figure set by the state. 333 F. Supp. 1113. The three-judge district court there emphasized that New Jersey did not deduct *any* disregarded income of *any* employed person in determining eligibility or in calculating the amount of the grant. Instead, it substituted its own administrative ceiling in the need-determination process. Under these circumstances the district court found that the New Jersey scheme violated clause (8), and the United States Supreme Court affirmed.

The instant case is clearly distinguishable from McCorkle. Minnesota does deduct the full amount of disregarded income in determining eligibility and calculating the amount of the grant. It does not do so in the recoupment process because that process recovers overpayment and does not determine eligibility or need. Minnesota had already provided appellant with a larger grant than she was entitled to; it did not attempt to shortcircuit Federal standards to provide a smaller grant as did New Jersey.

418

merit.[16] Since the recoupment in the instant case was in all respects proper, the order must be affirmed.

Affirmed.

---

[16] Appellant argues that the Welfare Department may recoup no more than $275, the amount of her monthly grant, because she could have voluntarily terminated her assistance when she received the refund and reapplied for the full grant the following month. This argument lacks merit. First, she did not terminate her grant. Second, as the trial court noted: "* * * However, if the county had been notified of the payment, appellant would have been required to budget the refund and any amount above and beyond that required for a single month would be budgeted for subsequent months." We see no reason why the Welfare Department may not recoup what it has determined to be the full amount of the overpayment under the state and Federal regulations discussed herein.