Francine MURPHY, et al., Individually and on Behalf of Their Minor Children, Appellants,

and

Elaine Sundlie, intervening plaintiff, Appellant,

v.

James HINIKER, Individually and as Deputy Commissioner of the Minnesota Department of Public Welfare, et al., Respondents,

Richard Hanson, et al., Individually and as Members of the Hennepin County Welfare Board, Respondents.

No. 47649.

Supreme Court of Minnesota.

Jan. 6, 1978.

Michael R. Fargione, Legal Aid Soc., Minneapolis, for appellants.

Warren Spannaus, Atty. Gen., Paul G. Zerby, Asst. Atty. Gen., John H. Daniels, Jr., Sp. Asst. Atty. Gen., St. Paul, for Hiniker, et al.

Gary Flakne, County Atty., and James F. Bares, Asst. County Atty., Minneapolis, for Hanson, et al.

Heard before TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from an order of the Hennepin County District Court granting respondents' motion for summary judgment and denying appellants' motions for summary judgment, a preliminary injunction, and certification of a class action. We reverse.

The seven appellants are recipients of Aid to Families with Dependent Children (AFDC) benefits, who brought an action seeking a declaratory judgment and an injunction to prohibit the Department of Public Welfare (DPW) and the Hennepin County Welfare Board from treating certain rent credit refunds as income received by appellants in determining the amount of their AFDC grants.

In 1975, appellants paid rent for their housing accommodations. In 1976, each appellant applied for a rent credit refund pursuant to the Minnesota Income-Adjusted Homestead Credit Act, Minn.St.1976, §§ 290A.01 to 290A.21.[1] Under this Act, individuals whose "property taxes payable or rent constituting property taxes" exceed a percentage of household income as speci-

---

1. The Act was amended by L.1977, c. 423, art. II, and is now referred to as the Minnesota Property Tax Refund Act. The Act is commonly called the "circuit breaker law" and the refunds are known by such terms as "rent credits," "rent rebates," and "homestead credits."

fied in the Act are entitled to a refund.[2] Section 290A.04, subd. 1.

The DPW has established a policy of treating refunds under §§ 290A.01 to 290A.21 as income to AFDC recipients, resulting in a reduction of a recipient's grant by the amount of the refund received. Thus, a recipient receiving such refund is given the option of either sending the entire refund to the county welfare department and continuing to receive an AFDC grant or of retaining the refund and having the AFDC grant reduced or suspended in an amount equal to the refund.

The main issue presented in this case is whether these rent credit refunds paid to AFDC recipients pursuant to §§ 290A.01 to 290A.21 should be treated as "income" when computing AFDC grants.

In granting respondents' motion for summary judgment the trial court stated:

"6. The instant case is controlled by the Minnesota Supreme Court's recent decisions in *Steere v. State, Department of Public Welfare*, Minn., 243 N.W.2d 112 and *Wacha v. Kandiyohi County Welfare Board*, Minn., 242 N.W.2d 837, which held tax refunds to be available to offset need. Here, property tax credits are a reasonably predictable annual source of income which must be applied to offset' monthly AFDC payments.

\* \* \* \* \* \*

"8. Accordingly, property tax credits received by AFDC recipients under the Minnesota Income-Adjusted Homestead Credit Act, Minn.Stat. §§ 290A.01 to 290A.21 (1975 Supp.), *as amended*, Minn. Laws 1976, Ch. 334, Secs. 1 and 18, are non-exempt income available to offset public assistance funds paid AFDC recipients."

The result in *Steere v. State, Dept. of Public Welfare*, 308 Minn. 390, 398, 243

N.W.2d 112, 118 (1976),[3] which held that income tax refunds are to be treated as income to AFDC recipients, followed closely the view expressed in an instruction of the United States Department of Health, Education and Welfare (HEW) to state agencies regarding income tax refunds. Also, in *Steere,* we expressed a fear that a contrary holding would subvert the efficient operation of the AFDC program. In this respect we stated:

"\* \* \* As noted in *Carr v. Saucier* (N.D.Ga.1973) No. 16,704, Civil, \* \* \* recipients would otherwise be encouraged to claim fewer deductions than they were legally entitled to in order to secure a larger, grant-determination-free refund. Federal and state treasuries thus become a protected savings account which may be withdrawn annually without an impact on the AFDC grant. Such a result would threaten the laudable goals and fiscal integrity of the AFDC program." 308 Minn. 399, 243 N.W.2d 118.

Neither of these concerns is present in the case at hand. First, apparently no Federal AFDC program instruction or other Federal interpretation or regulation under the AFDC statutes specifically covers the treatment of rent credit refunds. Second, the concern expressed by the court in *Steere* that recipients could circumvent the AFDC rules by securing "grant-determination-free" resources through the device of claiming fewer income tax deductions is not present in situations involving rent credit refunds. In the present situation, the rent credit refunds are not "grant-determination-free" resources.

To understand this distinction, a review of the AFDC grant computation procedure is necessary. The DPW uses a "flat grant" system to determine grants. Under this system, a statistical average of needs for

---

**2.** By allowing a portion of "rent constituting property taxes" to be refundable, the legislature considers a certain percentage of a renter's gross rent actually paid to a landlord to be attributable to the property taxes paid on the property rented.

**3.** *Wacha v. Kandiyohi County Welfare Bd.*, 308 Minn. 418, 420, 242 N.W.2d 837, 839 (1976), referred to the *Steere* decision as controlling.

AFDC households is established. Generally, an AFDC grant is computed by deducting "net income" from an established "standard of need." Minn.Reg. DPW 44 E(1)(d). For example, a family of two in Minnesota has financial needs set by the DPW at $272 per month. Minn.Reg. DPW 44 E(1)(c). If the family has net income of $80, the AFDC grant will be $192. If income is $60 the grant will be $212, etc. In this computation, a person earning $100 but having $20 withheld for income taxes would have only the $80 actually received counted as income for AFDC purposes.[4] For example:

| Flat Grant | | $272 |
|---|---|---|
| Monthly Salary | $100 | |
| Tax Withheld | 20 | |
| Less Income | | 80 |
| AFDC Grant | | $192 |

Therefore, an increase in income taxes withheld would constitute a corresponding increase in AFDC payments. This illustrates why in *Steere* we were explicitly concerned with the potential for manipulation of AFDC payments.

According to the facts in *Steere*, Lucille Steere had approximately $285 withheld from her earnings for income tax payment. As can be seen by the example above, she received an additional $285 in AFDC funds in 1973 to compensate for this withheld money. In 1974, the $285 was paid to her as an income tax refund. In *Steere*, we therefore upheld the DPW's policy treating this refund as new income.

This analysis cannot apply to the present case. The circumstances of appellant Francine Murphy may be used to illustrate the distinguishing features. During 1975, she received $272 per month from AFDC for herself and her child. She had no other income. No income was disregarded in computing her grant.[5] She received $272 per month regardless of her actual housing costs. Thus, she would receive $272 whether she paid $140 a month rent, $120 a month rent or whatever amount of rent. In fact, Francine Murphy paid rent of approximately $140 per month in 1975. Unlike Lucille Steere's situation, the amount paid for rent reduced the amount of funds she had for other purposes. Therefore, it can be plainly seen that the money returned to her in 1976 under the Income-Adjusted Homestead Credit Act (approximately $24 per month) was not new income. Rather, it was a return of a part of her AFDC grant received in 1975. The *Steere* and *Wacha* decisions are clearly distinguishable from the present case.

Appellants claim that since the *Steere* and the *Wacha* decisions are distinguishable from their situation, there is nothing else that supports the DPW's interpretation of the nature of the rent credit refund and further assert that there are numerous other indications that the DPW's policy is erroneous. They contend that the legislature easily could have specifically excluded an AFDC recipient's right to receive or to retain such refund, as has been done in other states having comparable statutes. See, e. g., Ariz.Rev.Stat.Ann. § 43–128.02(c) (Supp. 1977); Cal.Rev. & Tax Code § 17053.5(c)(2) (Supp.1977); Wis.Stat.Ann. § 71.09(7)(p) (Supp.1977). This was not done by the Minnesota legislature when it enacted the Income-Adjusted Homestead Credit Act, although welfare recipients had been expressly excluded from the benefits of certain prior Minnesota renters' credit provisions. See, Minn.St.1967, § 290.0613, repealed by Ex.Sess. L.1971, c. 31, art. 8, § 8.

Appellants in a further effort to clarify legislative intent indicate that according to the present system the commissioner of rev-

---

4. The DPW's regulations provide that money withheld for income taxes is not counted as net income. Minn.Reg. DPW 44 D(13)(h)(2)(e).

5. Pursuant to Federal regulation 45 CFR § 233.-20(a)(3)(i) (1976), the Minnesota Legislature has chosen to allow an AFDC recipient to accumulate resources up to certain amounts de-pending upon the number of family members. Minn.St. 256.73, subd. 2(2); Minn.Reg. DPW 44 D(12)(d). In addition, pursuant to 45 CFR § 233.20(a)(4)(ii) (1976), certain assets are completely excluded from income. Minn.Reg. 44 D(13)(b).

enue, pursuant to §§ 290A.01 to 290A.21, disburses annual refunds of about $8 million to approximately 40,000 AFDC families throughout the state from the general revenue fund. The DPW then collects this money and returns it to the general fund. Appellants question why the legislature would have chosen 40,000 welfare families to act as intermediaries for this transaction when it easily could have disallowed the welfare recipients' right to this refund. They further contend that there would be little reason for such families to apply for such refunds and that the result would be contrary to Minn.St. 645.17(1):

"In ascertaining the intention of the legislature the courts may be guided by the following presumptions:

"(1) The legislature does not intend a result that is absurd   *   *   *."

We mention further that there is no requirement that anyone must report his rent credit refund under the Minnesota Income Tax Act. Minn.St. c. 290.

■■■ We conclude that these rent credit refunds under the Income-Adjusted Homestead Credit Act are not income and are therefore not accountable as such by the AFDC recipients. The purpose stated by the legislature in the title of the Act reads:

"An Act relating to taxation; providing state relief to homeowners and renters for extraordinary property tax burdens;   *   *   *." L.1975, c. 437.

The legislative intent in enacting the Income-Adjusted Property Tax Credit Act was to shift property tax burdens according to a family's ability to pay. In this respect, if the law was passed to help the poor, both working and nonworking, and the middle class, as the implication seems to be, certainly those receiving AFDC benefits would be included. Furthermore, it is clear that the overall purpose is equalization, not only economic and social, but geographical. If rent is more in certain areas of the state, the refund will be more, and, conversely, if the rent is less the refund will be less. This, in effect, equalizes the rents paid by

AFDC recipients who live in various sections of Minnesota with differing property tax burdens. DPW's policy thus frustrates the legislative policy of providing broad property tax relief.

The Income-Adjusted Homestead Act was amended by L.1976, c. 334, § 18, to include the following provision, found in Minn.St. 290A.22:

"Recipients of the aid to families with dependent children program who receive a supplemental housing allowance under section 256.879 are not eligible for the tax credit set forth under sections 290A.01 to 290A.21. The commissioner of revenue shall assist the commissioner of public welfare in the administration of the supplemental housing allowance, and shall provide the commissioner of public welfare with such records and information as are necessary to administer the housing allowance."

L.1976, c. 334, § 1, also added Minn.St. 256.879, which provides:

"SUPPLEMENTAL HOUSING ALLOWANCE. Subdivision 1. The commissioner of public welfare may, with the approval of the federal department of health, education and welfare, provide an annual supplemental housing allowance for recipients of the aid to families with dependent children program who would otherwise qualify for the credit set forth in sections 290A.01 to 290A.22.

"Subd. 2. The amount of the supplemental housing allowance, if any, shall be calculated in the same manner as the income adjusted homestead credit set forth at sections 290A.01 to 290A.22. Recipients may apply for this supplement in the same manner as claims submitted to the department of revenue under sections 290A.01 to 290A.22. The supplemental allowance shall be paid by local welfare agencies.

"Subd. 3. The supplemental housing allowance shall be financed from funds appropriated to the department of revenue pursuant to chapter 290A. The com-

missioner of public welfare and the commissioner of revenue shall cooperate with the federal department of health, education and welfare in any reasonable manner as may be necessary to qualify for reimbursement under the aid to families with dependent children program for costs incurred in the provision of the supplemental housing allowance."

If HEW's approval for the AFDC housing allowance is obtained, rent credit refunds clearly will become public assistance benefits payable to AFDC recipients in addition to monthly AFDC payments. Respondents contend that because of the contingent nature of this supplemental housing allowance there is evidence of legislative intent that no change take place in the AFDC program in advance of Federal approval. This contention is not persuasive. First and foremost, this 1976 legislation, when approved by HEW, will merely continue to authorize payment of rent credit refunds to AFDC recipients, and, secondly, it will bring 55-percent Federal reimbursement when approved. This seems to be a clear indication of what the legislature intended from the beginning.[6] We therefore reiterate that had the legislature intended to exclude AFDC recipients from the rent credit refunds it would have been a simple matter to follow the examples of Arizona, California, and Wisconsin, which explicitly exclude AFDC recipients from benefits under their homestead credit laws, cited *supra*.

■ The decision of the district court upholding the policy of the Department of Public Welfare is hereby reversed. The case is remanded with instructions to grant appellants' motion for summary judgment, to certify an appropriate class under Rule 23, Rules of Civil Procedure, and to deter-

mine the scope of that class and the relief, if any, due to the class members.[7] In remanding this case with these instructions, we follow the position adopted by the Eighth Circuit Court of Appeals in *Johnson v. Mathews*, 539 F.2d 1111, 1125, note 23 (8 Cir. 1976):

"* * * In such situation where the issue of the appropriateness of the action as a class action has not been considered in the district court, 'the better practice, for reasons of judicial economy, [is] for the appellate court to make such a determination on the basis of the record before it, rather than remanding for a decision on this question.' *Caldwell v. Craighead*, 432 F.2d 213, 216 (6th Cir. 1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1617, 29 L.Ed.2d 123 (1971). *See also Locke v. Board of Public Instruction of Palm Beach County*, 499 F.2d 359, 365 (5th Cir. 1974)."

Reversed and remanded.

SHERAN, C. J., took no part in the consideration or decision of this case.

---

6. The DPW has already promulgated a regulation which provides that the annual supplemental housing allowance will be treated as an exclusion from income if the program is approved by HEW. Minn.Reg. DPW 44 D(13)(b)(22).

7. The district court denied certification of a class, but made no findings of fact with respect

to the issue apparently on the basis of our decision in *Holisak v. Northwestern National Bank*, 297 Minn. 248, 210 N.W.2d 413 (1973). In *Holisak*, we held that a trial court need not determine the appropriateness of a class action where it grants summary judgment against the parties seeking class certification.