SANDRA MEAGHER v. HENNEPIN COUNTY
WELFARE BOARD AND ANOTHER.

221 N. W. 2d 140.

July 26, 1974—No. 44704.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Warren Spannaus*, Attorney General, *Thomas L. Fabel*, Deputy Attorney General, *Judy L. Oakes*, Assistant Attorney General, *Gary Flakne*, County Attorney, and *James Bares*, Assistant County Attorney, for appellants.

*Marino, Becker & Granquist* and *Stephen H. Parsons*, Legal Aid Society, Inc., for respondent.

Heard before Peterson, Kelly, and Knutson, JJ.

KNUTSON, JUSTICE.*

This is an appeal by the Minnesota Department of Public Welfare and the Hennepin County Welfare Board from an order of the Hennepin County District Court which reversed an order of the commissioner of public welfare. The order of the commissioner had affirmed action taken by the Hennepin County Welfare Board to reduce an Aid to Families with Dependent Children grant (hereinafter AFDC) which allotted to plaintiff, Sandra Meagher, benefits which took into consideration her needs as well as the needs of her two children. Mrs. Meagher appealed the commissioner's ruling to the district court. By agreement of the parties, the order of the commissioner constituted the entire record considered by the court. After hearing the contentions of the parties, the trial judge declared the decision of the commissioner arbitrary and unreasonable.

---

*Retired Chief Justice acting pursuant to Minn. St. 2.724.

The facts are not in dispute. They are derived from the briefs of the parties and the findings of the commissioner. Prior to February 1973, Mrs. Meagher lived in Hennepin County with her two children and received AFDC in amounts based upon the needs of the mother and the two children. In February 1973, Mrs. Meagher remarried. She was thereafter notified by the Hennepin County Welfare Board that her grant would be reduced, effective April 1, 1973, by eliminating that portion attributable to her individual needs. Thereafter the AFDC grant was to be based solely on the needs of the two children.

Mrs. Meagher and her husband are both full-time college students. Her tuition is paid by the Minnesota Department of Vocational Rehabilitation. Her husband's tuition is free for reasons not specified by the parties. Appealing the welfare board's action, Mrs. Meagher testified before the commissioner of public welfare that her husband's income was not sufficient to meet both his and her needs. His income is $146 per month, also received through the Department of Vocational Rehabilitation.

The only issue involved in this appeal is whether the commissioner could legally determine that Mrs. Meagher's needs could be automatically disregarded after her marriage.

The policy of the commissioner to disregard the needs of the mother after her remarriage is codified in Department of Public Welfare, Income—Maintenance Manual, IV-2224.04, which reads in part:

"*Stepfather*: It is the policy of the Minnesota Department of Public Welfare that the stepfather is a potential resource for all of the support of the stepchildren. Although he is a potential resource, he cannot be required to support his stepchild. Policies are set forth as follows:

1. The remarriage of a mother receiving AFDC will necessitate a new application by the mother; verification of the marriage; a redetermination of need; and, when possible, an interview with the stepfather, if continued aid is requested for the children. It shall be the responsibility of the county welfare agen-

cy to evaluate each situation and assist the mother and stepfather in making responsible decisions about the needs of the family whether the agency has been informed in advance of or following the marriage.

2. The county worker shall, whenever possible, arrange to interview the stepfather and mother together.

3. The stepfather is totally responsible for the furnishing of maintenance and medical needs of the mother. If the mother is employed or has other sources of income, her income shall first be applied to the needs of her children.

4. If the stepfather is a recipient of OAA, AB, or AD, he cannot support the mother or be expected to support her out of his assistance grant because his grant is based solely upon his individual needs. The mother's needs may be provided for in the AFDC flat grant.

5. Support payments of the natural father, if any, shall be applied to the child's needs. The natural father is not relieved of his obligation to provide support to the children by reason of the mother's remarriage unless the court order so provides.

6. The county agency shall not assume that a stepfather is making a total need contribution for one or more children. He should be given an opportunity to specify whether he is willing to contribute the full support of all or a number of the stepchildren.

"The AFDC family-allowance standard is based on a fair average of budgeted needs that has taken into account the decreased need resultant from the stepfather contribution. Therefore, in any case situation, contributions from a stepfather cannot be budgeted as income available to his stepchildren nor as a decreased need on the part of the stepchildren; however, the stepfather may wish to assume the full needs of one or more of his stepchildren, thereby removing a child or children from the assistance unit.

"It is the responsibility of the county welfare agency to fully document all pertinent factors relating to stepfather contribution in the case record."

The Department of Public Welfare and the commissioner take the position that the policy declared in the above manual is reasonable and therefore the commissioner's order is not arbitrary or unreasonable, as was found by the court. Mrs. Meagher, on the other hand, contends that the regulation as applied by the Department of Public Welfare (DPW) and interpreted by the commissioner is arbitrary and unreasonable in that it is not in conformity with the Federal AFDC policy set out in the Social Security Act, 42 USCA, § 601 et seq. More specifically, Mrs. Meagher alleges that the DPW and the commissioner, by interpreting the regulation as a blanket exclusion of married caretakers from AFDC eligibility regardless of their actual needs, have frustrated the Federal purpose of AFDC, that is of "maintain[ing] and strengthen[ing] family life and [helping] such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection * * *." 42 USCA, § 601.

At the outset, it is clear that a class of persons eligible for assistance must be determined by reference to Federal standards. Jefferson v. Hackney, 406 U. S. 535, 92 S. Ct. 1724, 32 L. ed. 2d 285 (1972). In the case of Townsend v. Swank, 404 U. S. 282, 291, 92 S. Ct. 502, 508, 30 L. ed. 2d 448, 456 (1971), the Supreme Court of the United States said:

"* * * [A] State's interest in preserving the fiscal integrity of its welfare program by economically allocating limited AFDC resources may not be protected by the device of adopting eligibility requirements restricting the class of children made eligible by federal standards. That interest may be protected by the State's 'undisputed power to set the level of benefits * * *.' "

In Townsend, the court also discussed the decision of King v. Smith, 392 U. S. 309, 88 S. Ct. 2128, 20 L. ed. 2d 1118 (1968), and said:

"Thus, King v. Smith establishes that, at least in the absence

of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause. We recognize that HEW regulations seem to imply that States may to some extent vary eligibility requirements from federal standards. However, the principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of § 402(a)(10) that aid be furnished 'to *all eligible* individuals.' " 404 U. S. 286, 92 S. Ct. 505, 30 L. ed. 2d 453.

Thus, it seems clear that while the state may properly attempt its own method of determining the needs of individuals who qualify as caretakers under the Federal statutes, it may not restrict the class of caretaker relatives made eligible by Federal statute.[1]

The trial court relied heavily upon Lopez v. Vowell, 471 F. 2d 690 (5 Cir. 1973), certiorari denied, 411 U. S. 939, 93 S. Ct. 1903, 36 L. ed. 2d 401 (1973). In that case the Texas State Department of Public Welfare denied AFDC caretaker benefits to the dependent children's married grandmother on the basis of a state welfare regulation which excluded married relatives from caretaker eligibility.[2] In holding that the Texas welfare regulation was

---

[1] See, Comment, 118 U. of Pa. L. Rev. 1219, 1241.

[2] In pertinent part, § 3411 of the Financial Services Handbook of the Texas State Department of ʻPublic Welfare provided: *"Caretaker (AFDC)*

\* \* \* \* \*

"(4) Must be a single relative (either a legal parent or another single relative) within the specified degree of relationship. However, no caretaker will be certified (and only the needs of the children) may be budgeted if the relatives are a married couple and each spouse is present, unless incapacity or receipt of categorical assistance is involved."

"clearly in conflict" with the Social Security Act, the Fifth Circuit Court of Appeals stated (471 F. 2d 693):

"* * * The plain language, legislative history, and purposes of the Act make clear that so long as one is needy and qualifies as a caretaker relative within the meaning of § 406, 42 U.S.C.A. § 606, no further restriction on eligibility for assistance is permissible.

"Although a State, in the interest of preserving the fiscal integrity of its welfare program by economically allocating limited resources, has the 'undisputed power to set the level of benefits,' the Supreme Court in Townsend v. Swank, 1971, 404 U. S. 282, 291, 92 S. Ct. 502, 508, 30 L. Ed. 2d 448, held that 'AFDC resources may not be protected by the device of adopting eligibility requirements restricting the class * * * made eligible by federal standards * * *.' Thus, while a State may establish criteria for measuring need (*e.g.,* Texas' budgetary standards) and may limit its welfare expenditures by setting the level of benefits (*e. g.,* Texas' percentage factor at 75%), the class of persons eligible for assistance must be determined by reference to federal standards. *See* Jefferson v. Hackney, 1972, 406 U. S. 535, 92 S. Ct. 1724, 32 L. Ed. 2d 285.

"The challenged regulations are precisely the type of blanket exclusion from eligibility condemned by Townsend. Section 406 (b) (1) defines 'aid to families with dependent children' as payments to meet the needs of *both* the dependent children *and* the caretaker relative with whom the children reside. Nowhere does the statute indicate that the caretaker must be a single individual in order for his or her needs to be included in calculating the amount of the AFDC grant. For a family to be eligible for AFDC assistance, the needy children, in addition to living with certain specified relatives, must have been 'deprived of *parental* support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a *parent.*' 42 U.S.C.A. § 606 (a) (emphasis supplied). It is the absence of a *parent* which is critical to AFDC eligibility, not the absence of

a relative or the spouse of a relative. In fact, in defining a 'dependent child' as one who resides with *'one or more'* of the specified relatives, § 406 (a) explicitly recognizes that a child might be living with a married relative. Similarly, § 406 (c) defines a 'relative with whom any dependent child is living' as 'one of the relatives specified in subsection (a) of this section and with whom such child is living * * * in a place of residence maintained by such individual (*himself or together with any one or more of the other relatives so specified*) as his (*or their*) own home.' 42 U.S.C.A. § 606 (c) (emphasis supplied). Thus, although money payments are generally available only to meet the needs of one of the relatives with whom the child is living, 42 U.S.C.A. § 606 (b) (1), the presence of other relatives in the home, including the spouse of the caretaker relative, was clearly foreseen. Indeed, the Act not only contemplates the presence of the caretaker's spouse, but specifies that in certain situations the spouse is *also* to receive aid, 42 U.S.C.A. § 606 (b) (1). This particularization is cogent evidence that Congress did not authorize the States to limit eligibility to unmarried caretakers. Cf. Townsend v. Swank, *supra,* 404 U. S. at 287, 92 S. Ct. 502. If the spouse of a caretaker, as well as the caretaker, is in some situations eligible to receive aid, certainly the mere presence of the spouse cannot disqualify the caretaker for assistance."

Appellants seek to minimize the weight to be given to the Lopez decision by arguing that the Lopez case involved a grandmother rather than a mother and that her husband's total income was $152 per month. We see no difference in that situation and the facts involved here as far as eligibility is concerned.

Next, appellants argue that the decision is one from the Fifth Circuit Court of Appeals and as such is not controlling in Minnesota. To be sure, the decision is not binding on us in the same sense as our own decisions are, but it is a persuasive interpretation of the applicable Federal law, inasmuch as eligibility is determined by Federal law. While we may not be bound by the Lopez decision, we are inclined to consider it as clearly stating

454

the interpretation that is to be given to the Federal law involved.

Originally, appellants also contended that there is no indication in the opinion that under Texas law a husband is obligated to support his wife as he is in Minnesota. Apparently, this position has now been abandoned, and, in any event, it has been answered by the Texas Court of Civil Appeals in Rylee v. Rylee, 244 S. W. 2d 717 (1951). Under Minnesota law, a husband is legally responsible for the support of his wife while they are married. Minn. St. 519.05. A stepfather is not legally bound to support the children of his wife by a former husband. In re Besondy, 32 Minn. 385, 20 N. W. 366 (1884) ; 14 Dunnell, Dig. (3 ed.) § 7302.

The trial court in its memorandum correctly stated:

"The question before this Court is not 'need' but 'eligibility.' There is no reason to consider need unless there is eligibility; and likewise, if there is eligibility, then need needs to be considered."

There is nothing in either Federal statutes or Federal decisions that will prevent the commissioner from attempting to induce or even compel a husband to assume his legal obligation to support his wife if he is able to do so, but the mere fact that a mother, otherwise eligible to receive AFDC, is married does not automatically destroy her eligibility, but instead must be taken into consideration in determining the amount necessary to maintain her and her children according to AFDC standards. Eligibility and need are not synonymous. Even under DPW's own rules, the mother's needs for assistance after marriage must be evaluated. In this case, the commissioner never reached this point because she simply adopted the position that upon remarriage the mother was ineligible for any consideration. This, the commissioner may not do under a proper construction of applicable law by Federal standards.

Thus, it follows that the trial court was correct in holding that the case should be remanded to the state agency for a consideration of the needs of the children and their caretaker mother. In this consideration, the commissioner has a right to consider all

relevant evidence in determining what is available for support not only of the mother but of the children after her marriage. It may well be that the commissioner will determine that in the long run it might be better to permit both husband and wife to complete their college education so that they will eventually be able to take care of their children without any AFDC support. These are all matters that should be taken into consideration, but in any event the trial court was correct in holding that the needs of the mother could not be simply disregarded solely because she remarried without considering what support would be available from her husband.

Affirmed.