OPINION OF THE COURT
Edward J. McLaughlin, J.
An order to show cause and petition was brought by the *1093 Law Guardian on behalf of the respondent pursuant to section 255 of the Family Court Act for an order directing the Onondaga County Commissioner of Social Services, or in the alternative, the New York State Department of Mental Health, to show cause why a personal financial allowance should not be made to the respondent to enable the respondent to purchase necessary clothing and incidental personal needs. The motion was opposed by both the Commissioner of Social Services and the Department of Mental Health on the grounds that section 255 authorizes the court to direct the assistance of certain designated State and county offices within their legal authority to render the requested assistance.
The Department of Social Services argued that the respondent, not having reached the age of 16, was not eligible for public assistance in her own name; that while her mother, the petitioner herein, was a grantee of public assistance, the respondent was not eligible to be included in that grant, since she was a resident of the adolescent halfway house of the Hutchings Psychiatric Center and, therefore, not living in the home of the public assistance grantee.
The Department of Mental Health argued that she was not eligible for the relief requested under that department’s program, because to be a grantee she would have to be 18 years of age. The final possible source of relief was to include the child in the grant that her father was receiving pursuant to his disability under the Social Security Act, but the Department of Mental Health argued that to include the respondent in that particular grant would be extremely damaging to her, and that under no circumstances should she be included within any benefits payable to the father.
To fully comprehend the plight of the respondent, it is necessary to review the background of this matter. On August 22, 1977, the Children’s Protective Unit of the Onondaga County Department of Social Services filed a petition alleging that the respondent herein was an abused child in that her father had forced her and her two younger sisters to commit acts of fellatio upon him, and also forced the children to permit him to commit acts of cunnilingus upon them. In addition, the petition alleged that the children were forced to witness these acts being committed by the father upon the other siblings. As a result of the emotional trauma suffered by the respondent, she, at the time of the filing of the abuse *1094 petition, had been admitted to the Benjamin Rush Psychiatric Center. On November 21, 1977, pursuant to subdivision (a) of section 1014 of the Family Court Act, the matter was referred to the Onondaga County District Attorney and the proceeding was continued. In addition, the court made a permanent order of protection on behalf of the children against their father, pursuant to section 1056 of the Family Court Act.
Thereafter, on June 7, 1978, the mother of the respondent filed a petition alleging that the child was ungovernable in that she absented herself from her mother’s home without permission and used drugs, as well as acting in an aggressive manner toward her mother, and was threatening suicide.
Subsequently, the child was admitted to the adolescent halfway house of the Hutchings Psychiatric Center, where she received treatment on an outpatient basis.
All parties agreed that the child had no funds and was in desperate need of money for clothing and other personal incidentals, but each of the agencies declared themselves to be helpless to assist the child, a conclusion this court finds incredible in the light of their obligation to provide for the needs of children such as the respondent. The agencies placed the responsiblity totally upon this court to devise some plan to bring assistance to the child, but they, themselves, were unwilling or unable to even review their own regulations in an effort to give to the court some suggested plan, thereby burdening the court to devise a solution consistent with the laws and regulations of this State. This the court had endeavored to do.
LAW
A brief review of the Federal — State Aid to Families with Dependent Children Program (AFDC) (US Code, tit 42, §§ 601-610), and an analysis of New York’s statutory and regulatory plan for participation in the program is necessary. "AFDC, one of several major categorical public assistance programs established by the Social Security Act of 1935, provides for the economic security of children by authorizing substantial federal funds to states choosing to participate in compliance with federal requirements.” (Bacon v Toia, 437 F Supp 1371, 1377.) "The [Supreme] Court [of the United States] has held that under § 402(a) (10) of the Social Security Act, 42 U.S.C. *1095 § 602(a) (10), federal participation in the state AFDC programs is conditional on the State’s offering benefits to all persons who are eligible under federal standards.” (Burns v Alcala, 420 US 575, 578.)
A "dependent child” is a child who is "living with [a specified relative] in a place of residence maintained * * * as his * * * own home.” (US Code, tit 42, § 606, subd [a].) "Aid to families with dependent children” means "any type of remedial care recognized under State law in behalf of, a dependant child * * * and includes * * * payments with respect to any dependent child * * * which do not meet the preceding requirements of this subsection [i.e., payments to meet needs of relatives with whom child is living], but which would meet such requirements except that such payments are made to another individual who * * * is interested in or concerned with the welfare of such child * * * or are made on behalf of such child * * * directly to a person furnishing food, living accommodations, or other goods, services, or items to or for such child.” (US Code, tit 42, § 606, subd [b], par [2].) If the approved State plan has made provision for protective payments, the foregoing provisions apply.
LIVING WITH A RELATIVE
In New York, aid to dependent children (ADC) is authorized by title 10 of article 5 of the Social Services Law. (Social Services Law, §§ 343-369.)
Under New York rules and regulations "a child or minor, to be eligible for ADC, shall be living in his own home * * * The child is considered to be living in his own home as long as the relative takes responsibility for the care and control of the child, even though * * * circumstances may require temporary absence of either the child or relative”. (18 NYCRR § 369.2 [f].) Federal regulations interpret the "living with a relative” requirement to mean that a child is eligible "even though: He is under the jurisdiction of the court (e.g., receiving probation services or protective supervision); or [when] Legal custody is held by an agency that does not have physical possession of the child.” (45 CFR 233.90 [c] [1] [v] [B] [1] [2].) Under the New York rules and regulations an eligible child becomes ineligible to receive an ADC grant when the child is "admitted to foster care or to an institution other than for care in a hospital”. (18 NYCRR 369.3 [c] [2] [iii] [c].)
*1096 CHARACTERIZATION OF A MENTAL HYGIENE HALFWAY HOUSE
It is the stated policy of the State of New York to, whenever possible, provide mental health services to residents of the State in their home communities, and the Department of Mental Health "should rely upon improved programs of institutional care only when necessary and appropriate.” Mental Hygiene Law, § 7.01.) "A halfway house is conceived to be a therapeutic service for patients who have reached the 'halfway’ mark toward resumption of independent living and who no longer need the intensive service of a hospital or institution.” (14 NYCRR 112.1 [d].) Among services provided in a halfway house program are outpatient medical or psychiatric clinical care, group therapy, counseling, and recreational and social rehabilitation. (14 NYCRR 112.8.) Thus, a halfway house is neither an institution nor a hospital, and, because of its intrinsic transitional nature, residence in a halfway house must be considered to be a temporary absence of the child from the home of its relatives. Further, the services offered and programs available to the temporary resident of a halfway house, the child with a mental health problem, are analogous to the services provided by probation to the child adjudicated under article 7 of the Family Court Act or the protective supervision provided for abused children under article 10 of the Family Court Act. In the case now before the court, the subject child has been the subject of both article 10 and article 7 proceedings. Thus, the services she is now receiving fall within the example of the extended "living with a relative” concept promulgated by the Federal regulations. (45 CFR 233.90 [c] [1] [v] [B] [1].)
In a case, Bacon v Toia (437 F Supp 1371, supra) involving New York’s statutory plan for particpation in the Federal emergency assistance program (US Code, tit 42, § 606, subd [e]), the United States District Court for the Southern District of New York found that the New York law to the extent that it precluded persons from emergency assistance program who were eligible under the Federal law was inconsistent with and violative of the Social Security Act and thus the New York law was found to be invalid under the supremacy clause of the United States Constitution. Here, the issue is the interpretation made of the law by the regulations issued by the Federal and State officials charged with administering the aid to dependent children program. This court takes judicial notice of the statutory interpretation made by the Federal regula *1097 tions (US Code, tit 44, § 1507), and holds that a child who is living in a halfway house is living at home for purposes of receiving aid to dependent children.
PROTECTIVE PAYMENTS
When a relative is unable to manage ADC allowances, a public welfare official may "pay the allowances to another individual who is interested in or concerned with the welfare of the child and relative.” (Social Services Law, § 350-a, subd 1; see 45 CFR 234.60.) The New York rules and regulations require that such protective payment "shall be made only with the participation and consent of recipient or his eligible relative”. (18 NYCRR 381.7 [a].) Then, after consent is obtained, or even if consent is not obtained but protective payment is "deemed appropriate”, payment may be made to "the superintendent, or his designee, of a public institution for mental diseases * * * provided * * * no other suitable protective payee can be found * * * and there are appropriate staff available to assist the superintendent in carrying out the protective payment function.” (18 NYCRR 381.7 [a] [4] [i] [ii].) Federal standards for protective payees state that "[i]f it is in the best interest of the recipient for a staff member * * * of any * * * appropriate organization to serve as a protective payee, such selection will be made preferably from the staff of an agency * * * providing protective services.” (45 CFR 234.60 [a] [7] [i].)
CONCLUSION
For the above-stated reasons, it is the finding of this court that the relief sought is within the legal authority of the Commissioner of Social Services. Further, it is in the best interests of the subject child that ADC payments shall be made to a staff member of the Hutchings Psychiatric Center adolescent halfway house. This court, therefore, designates the Director of the Hutchings Psychiatric Center as protective payee for the subject child and orders that ADC payments be made to said payee by the Commissioner of Social Services for nine months, effective immediately.
Submit order accordingly pursuant to section 255 of the Family Court Act.