Mary BRUNNER, Appellant,

v.

STATE OF MINNESOTA DEPART-
MENT OF PUBLIC WELFARE,
Respondent,

and

Hennepin County Welfare Board,
Respondent.

No. 49412.

Supreme Court of Minnesota.

Sept. 21, 1979.

Rehearing Denied Nov. 13, 1979.

Randall Smith, Legal Aid Society of Minneapolis, Inc., Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Paul G. Zerby, Asst. Atty. Gen., and Ellen C. Dubuque, Sp. Asst. Atty. Gen., St. Paul, Charles F. Sweetland, Asst. County Atty., Minneapolis, for respondents.

Heard by OTIS, PETERSON, and KELLY, JJ., and considered and decided by the court en banc.

OTIS, Justice.

This is an appeal by Mary Brunner, a Minneapolis resident and recipient of Aid to Families with Dependent Children (AFDC), from an order reducing her monthly maintenance grant from $404 to $286 because two of her three children were enrolled in a child welfare long-term residential treatment center in Duluth, Minnesota. The order issued by William B. Christensen, Acting Judge of the District Court of Hennepin County, affirmed a reduction sustained by the Commissioner of Public Welfare after a de novo hearing by the state welfare referee.

■ Judicial review is authorized by Minn.St. 256.045, subds. 7–9. The district court applied the scope of review set forth in the Administrative Procedure Act, Minn.St. 15.0425, and concluded the order was supported by substantial evidence and was not arbitrary or capricious or affected by error of law. We apply the same scope of review. See, *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 826 (Minn.1977).

■ The issues are whether the boys were living with their mother, within the meaning of Minn.St. 256.12, subd. 14, to qualify her for aid to care for them, or were away from home for special educational needs, to qualify them for an exception to the state's "physical presence in the home" requirement provided in Minn.Reg. DPW 44(D)(3)(a) 12 MCAR § 2.044(D)(3)(a). As the boys' needs were essentially eliminated with respect to their dependence on appellant for their daily food, shelter, supervision, we conclude they were not living with her for purposes of any AFDC eligibility based upon their dependency. Because we also conclude that no special educational needs required the boys' enrollment at the center, which focuses instead on behavioral problems affecting more than their schooling, we hold that the reduction of AFDC benefits reflected a change in need not excepted by the welfare regulation, and was therefore proper.

Mary Brunner, divorced, was living in Minneapolis with her three children and receiving AFDC funds from the Hennepin County Welfare Department in 1976 and 1977 when she sent her two sons to Northwood Residential Treatment Center for children with emotional, behavioral, and adjustment problems.

David, age 9 at the time of the state hearing, had begun having behavior problems during the divorce several years earlier, setting fires at home and school and threatening to kill his mother and himself. While he was under psychiatric care, he was placed unsuccessfully in two foster homes and underwent treatment at Abbott Hospital. His psychiatrist recommended the center and a county social worker placed him there in August 1976. He is two years behind in school.

Clayton was 11 at the time of the hearing, and his problems involved aggressiveness and unruly behavior in school, and breaking into neighborhood buildings. He was doing his school assignments, although, like David, he had difficulty learning. At the suggestion of another social worker, the family moved to a new neighborhood and school, but the problems persisted and included one incident with the juvenile court. Northwood personnel suggested Clayton also attend the center.

David came home on weekends at two- to four-week intervals late in 1977 and Clayton came home at Christmas. Alternate weekend trips followed, and Mary and her daughter visited the center as well. The Northwood program is designed to involve the family, uses the home as a base, and is geared toward returning the children to their own home and school.

Lora Guidera, the primary social caseworker for the family since September 1977, testified at a county hearing that both school and home problems were treated at Northwood and that the unique educational needs could not be met by a public school.

The $1,200 monthly cost per child, including clothing and expenses, is paid from county welfare funds. Moreover, it was undisputed in affidavits submitted to this court at our request that the county reimbursed appellant at fixed rates for costs of food and transportation incurred by the visits.

It was also undisputed that those funds were not available for any portion of the $225 rent or the more than $45 utility costs for her present three-bedroom home which includes a room for the boys.

Except for the finding that the agency contended the boys were not living with their mother, the commissioner's decision did not address that threshold issue. It rested on the ground that the placement did not meet the exception for special educational needs in the department's regulation. The conclusions stated in part:

"2. There is no evidence that the placement of the children at Northwood was the direct result of the public school not being able to meet their educational needs. We would conclude that both children have serious emotional problems that no doubt are evidenced in their school experiences as well as all of their other relationships. However, we cannot conclude that the purpose of placement at Northwood was because the public school system had failed them or that their primary difficulty was in school."

1. For purposes of AFDC eligibility, a " 'dependent child' * * * means a child * * * who is living with [a specified relative] in a place of residence maintained by one or more of such relatives as his or their home." Minn.St. 256.12, subd. 14.

■ Further, AFDC is a joint federal-state program and a state must determine eligibility for a class of persons by reference to federal standards. *Steere v. State, Dep't. of Public Welfare*, 308 Minn. 390, 391, note 1, 243 N.W.2d 112, 114 (1976); *Meagher v. Hennepin County Welfare Bd.*, 300 Minn. 446, 450, 221 N.W.2d 140, 142 (1974), citing *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972). Since the state definition is essentially identical to the federal definition in the Social Security Act with regard to the "living

with" requirement,[1] the question is whether the agency's interpretation and application of the definition comports with federal policy. See, *King v. Smith*, 392 U.S. 309, 333 note 34, 88 S.Ct. 2128, 2141, 20 L.Ed.2d 1118, 1134 (1968).

The regulation promulgated under the federal statute in furtherance of that policy explains:

"A home is the family setting maintained or in process of being established, as evidenced by assumption and continuation of responsibility for day to day care of the child by the relative with whom the child is living. A home exists so long as the relative exercises responsibility for the care and control of the child, even though either the child or the relative is temporarily absent from the customary family setting. Within this interpretation, the child is considered to be 'living with' his relative even though:

"(*1*) He is under the jurisdiction of the court (e. g., receiving probation services or protective supervision); or

"(*2*) Legal custody is held by an agency that does not have physical possession of the child."

45 C.F.R. § 233.90(c)(1)(v)(B).

In Minnesota, the federal policy has been interpreted by the welfare department to require physical presence in the home, but the agency also permits two exceptions consistent with the temporary absence allowed by the federal regulation. At the time of the reduction, Minn.Reg. DPW 44(D)(3)(a) and (b) provided:

"3. Physical presence in the home.

"a. A child must reside in the same home with an eligible caretaker to be eligible for AFDC unless he/she has special educational needs which require that he/she reside away from home.

"b. If an emergency exists that deprives the child of the care of the relative through whom he has been receiving aid, temporary absences of the caretaker or the child from the home will not defeat AFDC eligibility, for a temporary period necessary to make and carry out plans for the child's continuing care and support. No absence may exceed six months and all absences of more than three months shall be referred to the Commissioner for a determination of continued eligibility." 12 MCAR § 2.044(D)(3)(a) and (b) (1976 Supp.).[2]

As we read the definition of dependent child with the federal regulation, they contemplate that the child be dependent for shelter upon the home of the recipient relative primarily. Temporary absence, court jurisdiction, and legal custody without physical possession are all situations consistent with that premise.

█ It is significant in our analysis of appellant's eligibility for the higher grant that the only substantial item not reimbursed by the child welfare program is the portion of shelter costs attributable to maintaining a room at home for the boys. Need for shelter is crucial for determining AFDC eligibility based on dependency, and cost of shelter is an obvious factor in determining the appropriate level of benefits. When, except during weekend visits, the

---

1. The federal definition provides in part: "(a) The term *'dependent child' means a needy child* (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with * * * [a specified relative] in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment." 42 U.S.C. § 606(a) (1976). (Italics supplied.)

2. Part (a) was changed, effective January 22, 1979, to: "a. A child must reside in the same home with an eligible caretaker to be eligible for AFDC unless he/she has special educational needs *which cannot be met by local public school district* which require that he/she reside away from home. *'Educational needs' for this provision is defined as a curriculum directed toward achieving a special vocational or academic goal*." (Italics supplied.) 3 S.R. 1445 (12 MCAR § 2.044(D)(3)(a)).

need is eliminated and the cost is met by funds from a separate source, eligibility and grant level must be considered in light of those facts.

■ Although the federal statute was amended in 1950 to provide for needs of the caretaker relatives as well as the dependent children,[3] the state standards of need control, provided the federal eligibility requirements are not altered. *Townsend v. Swank*, 404 U.S. 282, 291, 92 S.Ct. 502, 508, 30 L.Ed.2d 448, 456 (1971); *King v. Smith*, 392 U.S. 309, 334, 88 S.Ct. 2128, 2142, 20 L.Ed.2d 1118, 1135 (1968); *Super Tire Engineering Co. v. McCorkle*, 412 F.Supp. 192, 195 (D.N.J.1976), affirmed, 550 F.2d 903 (3rd Cir.), certiorari denied, 434 U.S. 827, 98 S.Ct. 106, 54 L.Ed.2d 86 (1977); *Doe v. Hursh*, 337 F.Supp. 614, 617 (D.Minn.1970).

The record shows that Mary Brunner is maintaining or in the process of establishing a family setting for all three children, but with regard to her sons it cannot be said she was exercising responsibility for their day-to-day care and control after transfer of that responsibility to Northwood. Nor was she required to provide them with shelter on a daily basis for the major part of each month. The grant reduction acknowledged a change in the family's eligibility level; it did not redefine that eligibility to require more.

Mrs. Brunner brings to our attention a recent case from a family court in another jurisdiction: *Matter of Hall*, 96 Misc.2d 1092, 410 N.Y.S.2d 496 (1978). While that case held that a child living in a mental health halfway house was living at home for purposes of AFDC eligibility, the state's definition of a halfway house required that residence there be considered a temporary absence which, in turn was excepted by the

federal regulation. 96 Misc.2d 1095, 410 N.Y.S.2d 499. In addition, the halfway house services were deemed analogous to the probationary and protective services provided by Family Court Act proceedings of which the child had been the subject; since the court's role did not defeat eligibility in the federal regulation, the halfway house was held not to defeat it either. 96 Misc.2d 1095, 410 N.Y.S.2d 499. Moreover, the director of the treatment center was authorized as a protective payee to receive AFDC funds on the child's behalf. 96 Misc.2d 1097, 410 N.Y.S.2d 500.

As there is no claim in this case that any of the federal exceptions apply, and the recipient here is not the institution applying AFDC funds on the boys' behalf, the case is easily distinguishable. We see no basis in fact or law for holding that the boys are living with their mother to entitle her to the higher grant.

■ 2. Aside from the fact that her efforts are contributing to their permanent return, the only other basis upon which she claims the reduction is improper is the department's regulation providing that when special educational needs require residence away from home, eligibility is not disturbed. Mrs. Brunner relies upon the examples of such needs found in the department's program manual:

"Under age 18 and has special educational needs that cannot be met by the local public school district. Special need must be documented in the case record.

"*Examples:* 1) Mental emotional, or physical handicap or

2) Problems of school adjustment."

Minn. Dept. of Public Welfare, AFDC Program Manual, Part IV–C (Revised 4/1/77).[4]

**3.** Act August 28, 1950, c. 809, Title III, Pt. 2, § 323(a), 64 Stat. 551 (amending 42 U.S.C. § 606(b) [1946]).

**4.** Alternatively, she argues that any distinction between behavioral and academic problems is unauthorized, arbitrary, an unconstitutional denial of equal protection, and a violation of the federal Rehabilitation Act, 29 U.S.C. § 794 (1976). We believe the distinction is implied by

the omission of special behavioral needs from the language of DPW 44(D)(3)(a), and that it is *entirely reasonable since the public schools are not expected to handle severe behavioral problems.* The discrimination charges are equally without merit as the needs of emotionally disturbed children are adequately addressed by child welfare legislation.

The 1979 amendment to the regulation expressly defines these needs "as a curriculum directed toward achieving a special vocational or academic goal." 3 S.R. 1445 (12 MCAR § 2.044(D)(3)(a) (1979)). When the reduction occurred, prior to the amendment, no definition was provided outside the contrary and unambiguous language of the manual quoted above. Nevertheless, the commissioner has interpreted the phrase to exclude problems that are primarily mental and emotional, and we defer to that interpretation as we have previously "decline[d] to interfere with what we perceive[d] to be the commissioner's broad discretion to fairly administer public assistance." *Steere v. State, Dept. of Public Welfare*, 308 Minn. 390, 395, 243 N.W.2d 112, 116 (1976).

The caseworker stated that the public school could not meet David's and Clayton's educational needs, but the commissioner's order commented on the lack of evidence to support the allegation that the school system failed to meet its obligation in that regard. The allegation assumes that the public schools are required to overcome severe behavioral problems which lie at the root of a child's inability to learn or to adjust to the system, but we are not aware that the schools must shoulder any such weighty responsibility.

On the contrary, we are persuaded by the agency's argument regarding the policy underlying the educational needs provision. It is designed to avoid penalizing an AFDC recipient when the schools lack special educational facilities or expertise in teaching, and a physically or intellectually handicapped child is forced to utilize an alternative institution to obtain a standard education. We agree with the commissioner that the evidence does not support a conclusion that the school system is deficient when professional expertise beyond teaching skills is necessary to treat a broad and central behavioral difficulty. The purpose of Northwood is precisely to apply that expertise to a wide range of the child's normal activities, including schooling.

The boys' serious problems developed soon after their parents' divorce and involved their behavior at home and in the neighborhood as well as at school. In turn, those problems affected their academic performance. We conclude that they also required the boys' absence from home, and the state was not deficient in failing to educate them.

If the Northwood program burdened appellant with expenses which precluded the weekend visits, our view of the reduction might be different. We note in that regard the case of *Haceesa v. Heim*, 84 N.M. 112, 500 P.2d 197 (1972), where the New Mexico court of appeals reversed an agency reduction when children who attended boarding school free of cost for board and room were financially unable to return home for weekends and holidays. The court reasoned that the regulation authorizing reduction of AFDC benefits did not state that the children must remain away, and the room and board were available resources only when the children were actually at the school. It viewed the difficulty of computing pro rata benefits as insufficient for their denial, and remanded for such a computation. As the record herein does not demonstrate that the weekend visits would be precluded by a move to a smaller house, there is no need to continue the higher grant or to prorate the higher rent and utility costs.

The record does show by substantial evidence that those costs were the only substantial ones not paid in any part by child welfare funds; that appellant's sons actually lived at the center; and that they needed more extensive treatment than mere help with schooling. On those facts, we see no error in the agency's implied finding that the family's level of need was lower or in its conclusion that mental and emotional problems required the children's absence. Accordingly, there was no error of law in the eligibility determination or in deciding that exception did not apply, and we hold the reduction of AFDC benefits was proper. The decision of the district court is affirmed.

WAHL, Justice (dissenting).

Because I consider the Court's decision to be inconsistent with both the letter of, and

the policy behind, the AFDC program, I must respectfully dissent.

As the majority points out, the essential test for eligibility relevant to this case under federal regulation is whether the parent exercises sufficient responsibility for care and control of her child. Under the regulations, however, the child may be "living with" his parent even though he or his parent is temporarily absent from home or the child is hospitalized or under the jurisdiction of the court. Thus, the fact that a parent does not provide for all the needs of her child every day will not necessarily cut off AFDC eligibility. It is true that while David and Clayton Brunner stay at Northwood their mother does not provide all their daily needs. She does, however, retain the primary responsibility for their care and control. She maintains the family home, where the boys share a bedroom. Every weekend one or the other, or both of them, stays with her in that home. Even though the county reimburses her at fixed rates for costs of food and transportation incurred by these visits, the shelter, a room of their own which she provides, was paid for by the AFDC grant, which has now been reduced.

Mary Brunner actively participates in the Northwood plan of treatment by making regular visits to the children and by helping to prepare for their return to their own home, neighborhood, and local school district. Of importance is the fact that since the placements are voluntary, she is responsible for deciding each day whether her children will stay in the treatment program. The Northwood program is specifically designed to involve the family, using the home as a base. As the ultimate goal is to return the children to their home and school, the absence of the children from the home is designed to be only temporary. Once the children return home she will resume total responsibility for their daily care.

Even were Mary Brunner not exercising sufficient control over her children to meet the eligibility requirements, Minn.Reg. DPW 44(D)(3)(a) allows AFDC payments to continue to provide for a child with "special educational needs which require that he/she reside away from home." The AFDC Program Manual, Part IV–C, explains that these needs must be such that they cannot be met by the local public school district, and include "mental, emotional, or physical handicap[s]" or "problems of school adjustment." The record clearly shows that since their mother's divorce David and Clayton have developed mental and emotional problems which cause problems in school adjustment. Furthermore, the department's child protection worker testified that the public school could not provide for these unique educational needs. Thus, the Brunners' case falls squarely within the exception, as interpreted by the manual. While the majority gives great weight to the 1979 amendment to the regulation, this amendment was not effective at the time of the grant reduction, nor did any other definition exist other than the "contrary and unambiguous language" of the manual.

Not only are Mary Brunner's children entitled to AFDC benefits under a common-sense reading of the relevant statutes, but terminating those benefits subverts the basic policies underlying the AFDC program. One of the main purposes for making AFDC payments is to strengthen family life. Minn.St. 256.85 provides that the AFDC statutes be liberally construed in order to accomplish their purpose:

> " * * * which is hereby declared to be to enable the state and its several counties to cooperate with responsible mothers or relatives in rearing future citizens, when such cooperation is necessary on account of relatively permanent conditions, in order to keep the family together in the same household, reasonably safeguard the health of the mother and secure to the children during their tender years her personal care and training."

Similarly, the aim of the Northwood program is to provide help to disturbed children with the least disruption to family life. Once Mary Brunner's grant is reduced, however, she will be unable to maintain her present home and will be forced to move to

much smaller, cheaper quarters,[1] where there will be no bedroom for the boys. The place they know as "home" will no longer be available to them, and the new quarters will afford them no separate room. When the New Mexico Court of Appeals faced a similar dilemma in *Haceesa v. Heim*, 84 N.M. 112, 500 P.2d 197 (1972), the court reversed the grant reduction. The court reasoned that funds must be available to enable children at a boarding school to go home on weekends and holidays, for to keep the family from being financially able to have them at those times would be inconsistent with the purposes of the AFDC program. If Mary Brunner's grant is reduced she will be financially unable to provide an adequate home for her sons, a result which is also inconsistent with the purposes of the AFDC program. Moreover, the boys will have little incentive to improve their behavior at Northwood so that they can return to a "home" which has no room for them. Thus, the state violates its own welfare policies and jeopardizes the $2,400-per-month investment it has made to put David and Clayton into treatment, all in order to save $118 per month. With this result I cannot concur. I would reverse the district court's decision to reduce Mary Brunner's AFDC grant and order the return to her of assistance wrongfully withheld.

SHERAN, Chief Justice (dissenting).

I agree with the views of Justice Wahl.

KELLY, Justice (dissenting).

I join in the dissent of Justice Wahl.

---

1. Mary Brunner's present rent is $225 per month for a three-bedroom house which includes a bedroom for the boys, with utility bills amounting to more than $45. The proposed reduction is from $404 per month to $286 per month.