In the Matter of the Contested Case of
Dr. Hector BROWN, Relator,

v.

MINNESOTA DEPARTMENT OF PUB-
LIC WELFARE, Respondent.

No. C9–84–295.

Court of Appeals of Minnesota.

Sept. 4, 1984.

Richard C. Hiniker, Meyer, Hiniker, Fleming & Fillia, White Bear Lake, for relator.

Hubert H. Humphrey, III, Atty. Gen., Ruth A. Mickelsen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPO-VICH, C.J., LESLIE and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

On February 17, 1982, the Department of Public Welfare notified Dr. Brown that an audit disclosed he had received payments

for services not authorized by the department. The notice demanded reimbursement. Brown appealed the notice of the proposed agency action and a contested case hearing was held before a hearing examiner on November 10, 1982. On January 7, 1983, the hearing examiner issued his findings of fact and conclusions, recommending that the department receive reimbursement. On March 3, 1983, the Department of Public Welfare Medical Advisory Committee reviewed the matter and agreed with the hearing examiner's recommendation. The department's Deputy Commissioner issued his order on January 12, 1984, adopting the hearing examiner's recommendation. Brown filed a petition for a writ of certiorari for review by this court.

We reverse.

## FACTS

Dr. Brown was enrolled as a provider in the Medical Assistance Program administered by the Minnesota Public Welfare Department from January 1, 1981 to February 14, 1982. As a part of his medical practice, Dr. Brown provided weight reduction services to his patients.

In early 1981, the Department of Public Welfare sent the Physician's Handbook to Brown's office. The Physician's Handbook contains rules for participation in the medical assistance program. It includes a rule requiring prior authorization from the department before weight reduction services can be administered under the program. Brown's office manager, Sheila Trumble, reviewed the handbook and telephoned Thomas JoliCoeur, the department's supervisor of professional services, to learn the procedures for gaining compensation for weight reduction services. Trumble testified that following the conversation, she had the "impression" prior authorization was not required for Brown's medical assistance patients. The hearing examiner accepted Trumble's testimony but found JoliCoeur did not specifically tell Trumble that Brown need not comply with the prior authorization requirement.

Following the conversation, Brown provided weight reduction services to many patients whose primary diagnosis was obesity. Brown and his patients expected that his services would be compensated by the medical assistance program. In January 1981 Brown's office submitted its first claims for those services which the department processed and paid. Those claims did not indicate prior authorization had been obtained. During the ensuing 12 months Brown submitted over 900 claims for weight reduction services and received $13,624.74 in payments from the department. No claims submitted indicated prior authorization had been obtained.

In February 1982, the department conducted an audit and discovered Brown had been paid for weight reduction services without prior authorization. The department demanded reimbursement of $13,624.74 in payments made, and withheld an additional $1,048.37 in payments for claims submitted by Brown.

Testimony at the hearing indicated that 70% to 80% of weight reduction requests are granted by the department and that 50% to 60% of surgical intervention requests are granted. The hearing examiner, although concluding the department was entitled to reimbursement, recognized that his decision would create a substantial windfall for the department and cause a hardship to Brown.

## ISSUE

Is the department estopped from demanding reimbursement of medical assistance payments made to a treating physician whose patients did not receive prior authorization for that treatment?

## ANALYSIS

The Minnesota Department of Public Welfare administers the Minnesota Medical Assistance Program under the authority of Minn.Stat. ch. 256B (1982). The legislature authorized the Department of Public Welfare to

[m]ake uniform rules and regulations, not inconsistent with law, for carrying

out and enforcing the provisions hereof in an efficient, economical, and impartial manner, and to the end that the medical assistance system may be administered uniformly throughout the state, having regard for varying costs of medical care in different parts of the state and the conditions in each case, and in all things to carry out the spirit and purpose of this program * * *

Minn.Stat. § 256B.04 subd. 2. The statute, as in effect when this proceeding was initiated by the department, also authorized the department to

> [e]stablish by rule general criteria and procedures for the identification and prompt investigation of suspected medical assistance fraud, theft, *abuse*, presentment of false or duplicate claims, presentment of claims for services not medically necessary, or false statement or representation of material facts by a vendor of medical care, and for the imposition of sanctions against a vendor of medical care * * *

Minn.Stat. § 256B.04 subd. 10 (1982) (emphasis supplied).

Under the authority delegated to it, the department promulgated a rule requiring physicians enrolled in the medical assistance plan to gain "prior authorization" from the department for weight reduction services. Minnesota Rules 9500.1070 subpart 4(A)(1). The department also promulgated a rule defining "abuse" for purposes of its "surveillance and utilization review program":

> "Abuse" means a pattern of practice by a provider, or a pattern of health care utilization by a recipient which is inconsistent with sound fiscal, business, or medical practices, and results in unnecessary costs to the programs, or in reimbursements for services that are not medically necessary or that fail to meet professionally recognized standards for health care. Abuse is characterized by, but not limited to, the presence of one of the following conditions:
>
> *      *      *      *      *      *

> C. The repeated submission of claims by a provider for health care which is not reimbursable under the programs, or the repeated submission of duplicate claims.

Minnesota Rules 9505.1750 subpart 2(C). These rules form the basis for the department's claim against Brown.

▮ On appeal we are bound by the hearing examiner's findings of fact when there is substantial evidence to support them. Our scope of review is limited by Minn.Stat. § 14.69 (1982) (formerly Minn. Stat. § 15.0425), *Brunner v. Minnesota Department of Public Welfare*, 285 N.W.2d 74, 75 (Minn.1979). The department is entitled to deference from courts when it acts within its area of expertise. *Red Lion Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969). Yet, where an agency decision is affected by harmful error of law it will be reversed.

Here the department found Brown repeatedly submitted claims without prior authorization, thus not complying with its rule for weight reduction services claims. The department concluded Brown's actions constituted abuse within the meaning of Minn.Stat. § 256B.04 subd. 10 and Minn. Rules 9505.1750 subpart 2(C). These conclusions are within the department's area of specialized knowledge and do not trouble the court. Brown, however, objects on other grounds asserting, among other things, that his failure to obtain prior authorization was an honest mistake induced by the department. He claims the department should be estopped by its conduct from reclaiming payments. Because we find for Brown on this issue, we need not address his other objections.

▮ Equitable estoppel may prevent a party from asserting an otherwise valid right. *Suske v. Straka*, 229 Minn. 408, 39 N.W.2d 745 (1949). Three elements must be shown before the doctrine can be applied: 1) specific inducement or representation by the party sought to be estopped, which 2) induces reasonable reliance by the other party that 3) results in harm, or will result in harm if the first party is allowed

to exercise his right. *Lundberg v. Northwestern National Bank,* 299 Minn. 46, 50, 216 N.W.2d 121, 124 (1974). When applying estoppel to a governmental agency, courts must carefully consider any public interest that might be hindered. *Ridgewood Development Co. v. State,* 294 N.W.2d 288, 293 (Minn.1980).

Brown alleges he reasonably relied upon two acts which indicated that prior authorization was not required: Thomas JoliCoeur's representations to Sheila Trumble during their telephone conversation, and the department's acceptance and payment of his claims for nearly one year without notifying him of the defect.

The hearing examiner found JoliCoeur did not specifically state Brown's patients could receive assistance without prior authorization, even though Brown's office manager was left with that impression. JoliCoeur's statements alone were inadequate to meet the requirements of equitable estoppel. Yet when the department received Brown's first faulty claims, it paid them and continued to pay Brown's claims without any objection or inquiry. This action may not have induced the initial mistake, but it perpetuated this mistake from a handful of faulty claims to over 900 in the next year. The statute places the onus on the department to develop rules and procedures for the prompt investigation of faulty claims. Minn.Stat. § 256B.04 subd. 10. Under the facts and circumstances of this case, the department's payment of Brown's first faulty claims provided the specific inducement needed for estoppel.

Brown also showed reasonable reliance and harm resulting from reliance. Brown's continued treatment of patients was reasonable after receipt of payment. His office manager in good faith believed that prior authorization was not needed. That faith was confirmed when the first claims were honored and paid, even though no prior authorization was obtained. Indisputably, most of Brown's patients would have received prior authorization had they been told to apply. If Brown is forced to return the payments he received, he will have little chance of collecting those amounts from his patients since they qualify financially for assistance and since they received treatment with the understanding that the state would pay.

The department concedes that Brown will be harmed if he is forced to repay, but argues that the harm to public interest by applying estoppel would be far greater. The department claims that applying estoppel here would diminish the effect of the prior authorization rule, thus working against the program's goal of providing medical treatment at a low cost.

The department has the difficult task of administering the complex medical assistance program. Its use of the prior authorization requirement for weight reduction treatment is an effective administrative device which it must retain. Medical assistance providers and receivers must carefully comply with it. In this case, however, application of the rule works both ways. While applying the rule strictly may ease the department's policing responsibility, it creates substantial harm to a physician. The participation of physicians and other vendors in the medical assistance program is essential to reaching the goal of providing medical care to needy persons "with free choice of vendor." Minn.Stat. § 256B.01. The statute which delegated to the department the authority to promulgate the prior authorization rule also instructed the department "in all things to carry out the spirit and purpose of this program * * *" Minn.Stat. § 256B.04 subd. 2. We find that whatever harm will be caused to the public interest by application of equitable estoppel is exceeded by that harm which would result if equitable estoppel were not applied.

### DECISION

The department is estopped from demanding repayment of medical assistance payments made to Brown for weight reduction services performed without the department's prior authorization.

Reversed.