HENNEPIN COUNTY WELFARE
BOARD, Respondent,

v.

Clinton SCHULTZ, Appellant,

State of Minnesota, Department of
Public Welfare, Lower Court
Respondent,

Ramsey County Board of
Commissioners,
Respondent.

No. C4-84-1578.

Court of Appeals of Minnesota.

Dec. 24, 1984.

Robert W. Gyurci, Minneapolis, for Hennepin County Welfare Board.

Laurie N. Davison, Legal Aid of Minneapolis, Minneapolis, for Clinton Schultz, Appellant.

Vicki A. Sleeper, St. Paul, for State of Minnesota, Department of Public Welfare.

Darrell C. Hill, St. Paul, for Ramsey County Board of Commissioners.

Heard, considered, and decided by LESLIE, P.J., and LANSING and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

This case involves a dispute over which of two counties is financially responsible for Appellant Schultz's Homemaker benefits. Schultz appeals from a Hennepin County district court decision that Ramsey County was financially responsible for his benefits. The district court overturned an agency decision to the contrary. We reverse.

## FACTS

Clinton Schultz, a quadriplegic, has been living in Minnesota for eight years. He has spent all but three months in Hennepin County. For those three months, Schultz was in a Ramsey County nursing home. At the same time, in March 1978, Schultz applied to Ramsey County for Homemaker services. Ramsey provided Schultz with 19 hours of Homemaker services per week until March 1982, when it reduced those services to 10 hours per week. The 10-hour limitation was an across-the-board maximum applied to all recipients irrespective of need. Schultz appealed the reduction of services as applied to him. But the Department of Public Welfare (DPW) (now Department of Human Services) denied his request to continue 19 hours of care. On July 8, 1982, Ramsey County district court affirmed the decision to limit Schultz's Homemaker care to 10 hours per week.

Near the time of the adverse decision, on June 29, 1982, Schultz applied for Homemaker care in Hennepin County. Schultz hoped to take advantage of more generous benefits provided by his county of residence. Hennepin County rejected the application on July 13, 1982. It reasoned that Ramsey County had assumed financial responsibility for Schultz since 1978; there was no justification for switching the county of financial responsibility now. Schultz appealed the denial of his application to the DPW.

On May 19, 1982, the DPW determined that Hennepin County must accept Schultz's application for Homemaker services. The agency reasoned that on June 29, 1982 Hennepin County had financial responsibility for Schultz because:

[T]he county responsible for payment for community social services is the county in which the recipient of services resides at the time of application.

Minn.Stat. § 256E.08, subd. 7 (1982). Schultz had lived in Hennepin County for six years. The agency concluded that he was not "county shopping." The agency also concluded that Schultz required 19 hours of Homemaker care. In light of Schultz's needs, Hennepin County's services were preferable to Ramsey's.

Hennepin County appealed this decision to Hennepin County district court. The court reversed the DPW determination, ruling that Ramsey County was financially responsible for Schultz's care. It reasoned that Schultz was county shopping. Also, it reasoned that the July 8, 1982, Ramsey County decision recognized Ramsey County's financial responsibility for Schultz, and collaterally estopped relitigation of the issue.

Schultz appeals from the Hennepin County district court decision.

## ISSUE

Does Hennepin County have financial responsibility for Schultz's Homemaker services?

## ANALYSIS

■ Generally courts defer to agency decision making. We must determine, just as the trial court, whether the agency decision was supported by substantial evidence. *Brunner v. State of Minnesota*, 285 N.W.2d 74, 75 (Minn.1979); Minn.Stat. § 14.69(e) (1982).

■ Though Schultz was receiving aid from Ramsey County, he had the right to apply for assistance from Hennepin Coun-

ty. Minn.Rules § 9550.1200 (1983). The DPW correctly determined that Schultz's June 29, 1982, application to Hennepin County met the statutory criteria for residency. It also recognized that Schultz had been a Hennepin County resident for six years and that he needed 19 hours of care. Thus its decision was based on substantial evidence.

■ By statute, an applicant's residency is a benchmark for his county's financial responsibility. Minn.Stat. § 256E.08, subd. 7 (1982). The statute ought to be flexibly interpreted to allow for ordinary changes in a recipient's residency. That would allow a resident to have input on the decision-making body. In the present case, Schultz did not move to Hennepin County only to apply for more liberal benefits. He had been a Hennepin County resident all along. These circumstances do not suggest county shopping.

■ Hennepin County advances the argument that the July 8, 1982, Ramsey County district court decision that limited Schultz's benefits to ten hours per week also was conclusive as to the financial responsibility of Ramsey County. That decision, however, does not bar Schultz's application to Hennepin County. The doctrine of res judicata prevents relitigation of the same claims. *See Mattsen v. Packman*, 358 N.W.2d 48 (Minn.1984). The validity of Schultz's application to Hennepin County was never considered by Ramsey County district court. Therefore, it was not precluded by that court's decision.

## DECISION

We reverse.