# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1192

_____

In re: Sheri Lynn Hanson, formerly known as Sheri Lynn Alger

*Debtor*

------------------------------

Sheri Lynn Hanson

*Appellant*

v.

Randall L. Seaver

*Trustee - Appellee*

_____

Appeal from the United States Bankruptcy
Appellate Panel for the Eighth Circuit

_____

Submitted: February 13, 2018
Filed: September 11, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

_____

[*]This opinion is being filed by Chief Judge Smith and Judge Colloton pursuant
to 8th Cir. Rule 47E.

SMITH, Chief Judge.

Sheri Hanson filed for bankruptcy in 2015. She later sought to exempt a property tax refund of $1,500, asserting that she could exempt the refund as government assistance based on need under Minnesota law.[1] The trustee objected to Hanson's amended exemption, and the bankruptcy court sustained the objection. The Bankruptcy Appellate Panel (BAP) affirmed. Hanson appeals, and we affirm.

## I. *Background*

Minnesota law provides a list of types of property that a bankruptcy debtor may claim as exempt. *See* Minn. Stat. § 550.37. Subdivision 14 of Minnesota Statute § 550.37 exempts "[a]ll government assistance based on need" and provides, in relevant part:

> All government assistance based on need, and the earnings or salary of a person who is a recipient of government assistance based on need, shall be exempt from all claims of creditors including any contractual setoff or security interest asserted by a financial institution. For the purposes of this chapter, government assistance based on need includes but is not limited to Minnesota family investment program, Supplemental Security Income, medical assistance, MinnesotaCare, payment of Medicare part B premiums or receipt of part D extra help, MFIP diversionary work program, work participation cash benefit, Minnesota supplemental assistance, emergency Minnesota supplemental assistance, general assistance, emergency general assistance, emergency assistance or county crisis funds, energy or fuel assistance, and food support. The salary or earnings of any debtor who is or has been an eligible recipient of government assistance based on need . . . shall, upon the debtor's return to private employment or farming after having been

---

[1]"Bankruptcy debtors may elect to use either the exemptions set forth in the federal bankruptcy code or in the nonbankruptcy law of the debtors' domicile." *Sholdan v. Dietz*, 108 F.3d 886, 887 n.2 (8th Cir. 1997) (citations omitted). Hanson chose to protect her assets under the Minnesota exemption provisions.

an eligible recipient of government assistance based on need . . . be exempt from attachment, garnishment, or levy of execution for a period of six months after the debtor's return to employment or farming and after all public assistance for which eligibility existed has been terminated. . . . The burden of establishing that funds are exempt rests upon the debtor.

Hanson argues that her property tax refund falls within the definition of "government assistance based on need." *Id.*

The State of Minnesota Property Tax Refund Act provides three types of refunds: (1) a refund for homeowners whose property taxes are above a certain percentage of their household income, Minn. Stat. § 290A.04, subd. 2; (2) a refund for renters whose rent constituting property taxes exceeds a certain percentage of their household income, *id.*, subd. 2a; and (3) a refund for homeowners whose property taxes increased substantially, *id.*, subd. 2h. Hanson's refund falls in the first category.

Under subdivision 2 of the Act, a homeowner whose property taxes are above a certain percentage of their household income is eligible for a refund. *See also id.*, subd. 2b ("The commissioner may reconstruct the tables in subdivision 2 for homeowners to reflect the elimination of the homestead credit beginning for claims based on taxes payable in 1990."). The maximum refund a household can collect is currently $2,710. *See* Minnesota Department of Revenue, Homeowner Schedule for 2017 (Filing in 2018/Fiscal Year 2019), http://www.revenue.state.mn.us/Forms_and_Instructions/ho_schedule_17.pdf. This amount decreases as household income increases, but a household with an income of up to $40,939 is eligible for the full $2,710. *See id.* Homeowners with household incomes of $110,650 and up are not eligible for the refund. *Id.* Although the payment is termed a "refund" under state law, it is actually a payment from the general treasury rather than a return of funds paid by the taxpayer.

Subdivision 2a sets up a similar type of scheme for renters whose rent constituting property taxes exceeds a certain percentage of household income. Renters with household incomes of $59,960 and up are not eligible for the refund. *See* Minnesota Department of Revenue, Renter Schedule for 2017 (Filing in 2018/Fiscal Year 2019), http://www.revenue.state.mn.us/Forms_and_Instructions/renter_schedule_17.pdf. Subdivision 2h provides an additional refund for homeowners whose gross property taxes payable have increased substantially over the past year. A homeowner whose gross property taxes payable on a homestead increased more than 12 percent on the same property is eligible for an additional refund, provided the increase is more than $100 and is not due to improvements made to the property. The refund is "60 percent of the amount of the increase over the greater of 12 percent of the prior year's property taxes payable or $100" and is available regardless of the homeowner's income. Minn. Stat. § 290A.04, subd. 2h.

## II. *Discussion*

This case requires us to determine whether a Minnesota property tax refund is exempt from the bankruptcy estate as "government assistance based on need" under Minnesota law.

When a party appeals a BAP decision, "we act as a second reviewing court of the bankruptcy court's decision, independently applying the same standard of review as the BAP." *In re Lasowski*, 575 F.3d 815, 818 (8th Cir. 2009) (citation omitted). We review factual findings for clear error, *In re Eilbert*, 162 F.3d 523, 525 (8th Cir. 1998), and legal questions—including the statutory interpretation question presented here—de novo. *In re Benn*, 491 F.3d 811, 813 (8th Cir. 2007). We construe exemption statutes in the favor of debtors. *In re Wallerstedt*, 930 F.2d 630, 631 (8th Cir. 1991). It is the trustee's burden to demonstrate that a claimed exemption is improper. Fed. R. Bankr. P. 4003(c).

When a debtor chooses to exempt property pursuant to state statute, we determine eligibility by looking to state law. Under Minnesota law, the first step in interpreting a statute is determining whether the statute is ambiguous. *Eclipse Architectural Grp., Inc. v. Lam*, 814 N.W.2d 692, 700 (Minn. 2012). "A statute is ambiguous 'if it is reasonably susceptible to more than one interpretation.'" *Id.* at 701 (quoting *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995)). When "a statute's words are clear and unambiguous as applied to an existing situation," Minnesota courts "construe the words according to their common and approved usage." *S.M. Hentges & Sons, Inc. v. Mensing*, 777 N.W.2d 228, 231 (Minn. 2010) (citations omitted). Courts "go beyond the specific language of the statute to determine the intent of the legislature" only if "the language of a statute is unclear or ambiguous." *Emerson v. Sch. Bd. of Indep. Sch. Dist. 199*, 809 N.W.2d 679, 684 (Minn. 2012) (citation omitted).

We begin with the text of Minnesota Statute § 550.37, subdivision 14. The Minnesota Legislature chose to define "government assistance based on need" through a long, non-exhaustive list of government programs. While the programs range in the services they provide, they all clearly aim to serve the basic needs of low income, disabled, or elderly people living in Minnesota. The list demonstrates that the key words in "government assistance based on need" are "based on." Consequently, there is only one reasonable interpretation of "government assistance based on need": government benefits that aim to provide the basic necessities to the needy.

The more difficult question is whether the property tax refund at issue here fits the Minnesota Legislature's definition of "government assistance based on need." Hanson argues that *In re Hardy*, 787 F.3d 1189 (8th Cir. 2015), requires us to conclude that it does. *In re Hardy* presented us with a similar question: whether the Additional Child Tax Credit (ACTC), 26 U.S.C. § 24, could be exempted as a "public assistance benefit" under Missouri bankruptcy law. *Id.* at 1192. We concluded it could and based our decision largely on the amendments to the ACTC, which

-5-

"enabled more low-income earners to claim a refund and increased the refund amount for many low-income earners who previously were receiving a small refund." *Id.* at 1193, 1195. To answer the question Hanson presents here, we conduct a similar analysis to that in *In re Hardy* and examine the Minnesota Legislature's "intent in passing the [property tax refund] law, the history of the statute (including any amendments), and the operation of the statute in practice." *Id.* at 1193 (citations omitted).

The text of the Property Tax Refund Act is our first and strongest indication that the refund is not government assistance based on need. The Act states that its "purpose . . . is to provide property tax relief to certain persons who own or rent their homesteads." Minn. Stat. § 290A.02. It is noteworthy that the Act does not state that its purpose is to provide property tax relief to needy individuals, such as those who are low-income, disabled, unemployed, or elderly. Moreover, households earning up to $105,499 are eligible for a property tax refund. *Id.* § 290A.04, subd. 2. Hanson correctly points out that we declined to adopt a rule that assistance could not be deemed to benefit the needy just because it also benefitted some non-low-income families. *In re Hardy*, 787 F.3d at 1193. But that does not mean that the income phase-out level is irrelevant. In *In re Hardy*, we noted that, in practice, a single parent supporting one child would no longer be eligible for any ACTC if his or her income exceeded $26,300. *Id.* at 1196. Here, in contrast, a household earning $100,000 and paying a property tax rate of 1.19 percent—the state average effective rate in Minnesota—on a $250,000 home would be eligible for a partial refund under § 290A.04, subdivision 2.

When we consider other parts of § 290A.04, we find further evidence that the Minnesota Legislature did not intend for the refund to constitute government assistance based on need. Specifically, the additional refund under subdivision 2h for homeowners whose gross property taxes payable on a homestead increased more than 12 percent is available regardless of the household's income. Hanson urges us to

ignore this subdivision and focus on only the subdivision that pertains to her. But we do not "consider[] statutory terms in isolation." *In re Benn*, 491 F.3d at 814 (citation omitted). That the same statutory scheme also provides a property tax refund to homeowners without regard to income, disability, or other type of need is another indicator that the refund available under subdivision 2 is not government assistance based on need.

The Minnesota Supreme Court's discussion of an earlier version of the statute further suggests that the Minnesota Legislature did not intend for the benefit to be based on need. According to the Minnesota Supreme Court, it was "clear that the [Act's] overall purpose is equalization, not only economic and social, but geographical." *Murphy v. Hiniker*, 261 N.W.2d 836, 840 (Minn. 1978). The Act was intended to help equalize property burdens across the state. *See id.* And while the court noted that it appeared that "the law was passed to help the poor," it stated the law was also passed to help "the middle class"—a level of income not generally considered "needy." *See id.*

Hanson contends that the history of the Property Tax Refund Act shows that it is designed to benefit low-income people. But the history of the Property Tax Refund Act is distinguishable from that of the ACTC, which gradually developed to overwhelmingly benefit the poor. *See In re Hardy*, 787 F.3d at 1195 (noting the amendments to the ACTC "enabled more low-income earners to claim a refund and increased the refund amount for many low-income earners who previously were receiving a small refund"). A review of the amendments to the Property Tax Refund Act demonstrates the opposite: the Minnesota Legislature has actually expanded eligibility to more higher-income earners. In 1994, the Minnesota Legislature reduced the additional percentage of the remaining amount of property taxes a claimant had to pay before being eligible for the state refund and raised the income phase-out to $61,929. The Minnesota Legislature raised the income phase-out again in 2001 to $77,519. In 2008, it decreased the percentage-of-income threshold for the top five

income brackets from 4 percent to 3.5 percent. The Minnesota Legislature increased the income phase-out in 2011 to $100,799 and in 2013 to $105,500—the current income phase-out. It also reduced the percentage-of-income threshold to 2.5 percent for the top three income brackets. That the current property tax refund is not aimed to benefit the needy becomes even clearer when we consider that, in 1983, the Minnesota Legislature imposed an income phase-out of $40,000. In 1987, it reduced the income phase-out even further to $35,000. But the Minnesota Legislature changed course and, since 1994, has consistently made the refund available to more higher-income earners and increased the refund amount available for higher-income earners. In summary, an overwhelming emphasis on benefitting the poor does not exist.

We conclude that the property tax refund does not fit within the Minnesota Legislature's definition of government assistance based on need and is therefore not exempt.

### III. *Conclusion*

Accordingly, we affirm the judgment of the Bankruptcy Appellate Panel.

_____